Chief Judge Conway.
The plaintiff is the manufacturer of the widely known ‘ ‘ Electrolux ’ ’ vacuum cleaner. The defendants-respondents are Solomon Sacks, who does business as “ Famous Vacuum Shops ” and “ Famous Appliance Shops,” and Vacuum Cleaner Conservation Company, Inc., of which Sacks is the president and principal stockholder.
It appears that respondents have been purchasing used ‘ ‘ Model XTT ’ ’ Electrolux vacuum cleaners from plaintiff and others since 1948 for prices ranging from $3.00 to $7.50 each. *560 Respondents would then disassemble the machines, clean and rebuild them, and, when necessary, supply new parts and accessories some of which were not manufactured by the plaintiff. The result would then be sold and advertised as ‘ ‘ rebuilt Electrolux” vacuum cleaners (trade-mark “Electrolux” displayed prominently). However, a small label and a decalcomania transfer which recite that the machine was reconditioned by Famous Vacuum Shops were attached to the machine.
In 1949 plaintiff requested by letter that respondents make it clear that the machines have been rebuilt by “Famous” rather than by Electrolux. Since-then, respondents have continued to buy thousands of used machines from plaintiff, rebuild them and advertise them as rebuilt by Famous Vacuum Shops, or Famous Appliance Shops with the full knowledge and acquiescence of plaintiff until January of 1953. However, the plaintiff, though it sold many used machines which it had acquired as ‘ ‘ trade-ins ’ ’ to dealers such as respondents, refused at all times to sell them new parts and accessories.
In 1952 respondents arranged for television advertising with a television promoter. They agreed that the commercials would furnish telephone numbers for prospective inquirers and that telephone responses would be turned over to respondents for $2 to $3 each. During the commercials which were broadcast over four television channels, the actor or salesman exhibited a “ rebuilt Electrolux,” described it as such in glowing terms and offered it for $14.95. Telephone numbers were also furnished for prospective inquirers.
The record further discloses that Adler, an investigator hired by the plaintiff, called one of the telephone numbers furnished during the commercial and requested a demonstration. Subsequently, one Forde, a salesman, arrived at Adler’s home where he demonstrated and sold to him a rebuilt machine. But then he attempted to sell a new machine not manufactured by the plaintiff which he claimed was a better machine. However, the investigator refused to make any further purchase and subsequently turned the rebuilt machine over to plaintiff’s engineers who examined it. Although the motor and body were manufactured by Electrolux, some of the accessories were not.
The proof also demonstrates that respondents sold new machines manufactured by several of plaintiff’s competitors but *561 that respondents did not mention these machines on the commercials. Bather, they offered the rebuilt machines at $14.95 for the purpose of attracting prospects to whom more expensive new machines not manufactured by plaintiff might be sold. Furthermore, respondents’ salesmen were not compensated for selling the ‘' rebuilt Electrolux ’ ’ but rather their compensation depended on sales of the other machines.
In June of 1953 Electrolux brought an action seeking injunctive relief, as well as damages, against Sacks, Vacuum Cleaner Conservation Company and others who are not parties to this appeal. After trial before the court sitting without a jury, Special Term rendered a decision with specific findings of fact, including those set forth above, and conclusions of law.
In addition to the facts already stated, Special Term found that the procedure was to endeavor to sell the ‘ ‘ rebuilt Electrolux ” and then to “ switch ” the transaction to the new machine by calling the “ rebuilt Electrolux ” “ just a lot of junk ”, and by saying that it looked “ silly ” and by disparaging it generally. Furthermore, respondents would give a salesman the names and addresses of four telephone inquirers, four new machines but only one “ rebuilt Electrolux.” Moreover, the salesman would be instructed not to permit the rebuilt machine to leave his hands but rather to disparage it and to try to sell the new machine instead. In addition the rebuilt machine could not be sold profitably for $14.95 for the initial cost and business expenses compelled respondents to rely on the sale of the higher priced machines in order to make the operation a paying one. In short, the court found that the telecasts were calculated to give the impression that a used Electrolux with Electrolux parts, which retained the quality associated in the public mind with plaintiff’s products, was obtainable at a low price whereas respondent’s actual purpose was to discourage the purchase of the advertised machines and induce the public to buy costly machines of makes other than Electrolux.
Special Term also found that some of the non-Electrolux parts were functionally inferior to the corresponding parts manufactured by the plaintiff. Moreover, it was further found that Sacks instructed the television promoter to telecast that the machines were rebuilt by the famous vacuum cleaner company (meaning Electrolux, a famous company). This use of the *562 word “ famous ” was held to be deceptive whether used as an adjective or a noun. However, the court also found that since January 12, 1953, when Electrolux made its first complaint in this regard, there has been no advertising using the word “famous”, the reference having been changed to Parsons Appliance Corporation.
Special Term concluded, in substance, that it was actionably deceptive to advertise the rebuilt machines with the Electrolux name when they contained non-Electrolux parts and that it was also actionable to use the name without stating that the reconditioning was actually performed by Vacuum Cleaner Conservation Company. The court also held that respondents’ sales practices constituted “bait advertising ” and that, as such, it was unfair to the public as well as the plaintiff owner of the advertised trade name. In addition, the court took the view that plaintiff was entitled to damages attributable to defendants’ acts of unfair competition, in an amount to be determined by a court-appointed Referee.
Accordingly, a judgment was entered thereon which, in substance, enjoined defendants from (1).using the word “ Electrolux ’ ’ unless the machines were wholly and completely the product of the plaintiff; (2) from offering any vacuum cleaner under the trade name “ Electrolux ” for the purpose of luring prospects with the object of diverting them from the advertised article by disparagement or otherwise and for the purpose of inducing them to purchase a product not manufactured by the plaintiff; (3) from advertising and selling under the name “Electrolux” a machine which was reconstructed by the Vacuum Cleaner Conservation Company without stating that the reconstruction was the work of that company; (4) from advertising and selling under the name “ Electrolux ” and representing that the machines were built by someone else than the actual rebuilder; and (5) from using the word “famous ” in advertising and promoting vacuum cleaners not rebuilt by plaintiff so that the use of the word ‘ ‘ famous ’ ’ was deceptive or misleading. Furthermore, the judgment directed that a Referee be appointed to report on the damages attributable to the acts of unfair competition including an accounting based on defendants’ profits.
*563 The Appellate Division, with one Justice dissenting, reversed certain specific findings of fact, made additional findings, reversed the conclusions of law, and, accordingly, dismissed the complaint. In addition to finding that plaintiff had shown no damages from the acts complained of, the Appellate Division found, in general, that respondents’ use of the word “ famous ”, a common trade name, was not deceptive, and, further, that there were no representations that the machines were new or rebuilt by plaintiff. Moreover, it observed that since 1948 plaintiff has been selling old machines to respondents, who, in turn, had since then been using the same methods of refurbishing and labelling the machines with plaintiff’s knowledge. Furthermore, although the Appellate Division agreed that respondents used the rebuilt machines as a lure to sell the new machines, it found that defendants did not refuse to sell the rebuilt machines, but did, in fact, sell 5,000 of them subsequent to 1948, including the one sold to plaintiff’s investigator.
It readily appears from the foregoing that three types of conduct are here involved. The first two which form the essence of the first cause of action in the complaint fall into that category of unfair competition wherein it is charged that defendants have “ palmed off ” their goods as those of the plaintiff. They are (a) the use of the Electrolux trade name on a machine which contains non-Electrolux parts and accessories, and (b) the use of the word ‘£ famous ’ ’ on the telecast. The third is respondents’ use of the rebuilt machine as a lure to sell other nonadvertised machines which is alleged in the complaint as the second cause of action and which shall be treated last.
When the Appellate Division reverses specific findings of fact and makes new findings, as in this case, it becomes our duty to determine which findings are supported by the weight of the credible evidence (Civ. Prac. Act, § 605; see Roberts v. Fulmer, 301 N. Y. 277, 281 [1950]; Chamberlain v. Feldman, 300 N. Y. 135,139 [1949]). In this connection, we note that the additional finding that respondents have been using the same procedure of replacing worn and missing parts since 1948 is amply supported by the record. In addition, the Appellate Division and the Special Term are in essential agreement on the facts as to *564 the prior dealings between plaintiff and respondents in which plaintiff sold the old machines with knowledge and acquiescence in the fact that the machines would be reconditioned and sold as rebuilt Electrolux vacuum cleaners. In brief, plaintiff knew what was happening to the machines and, yet, continued to sell old vacuum cleaners to respondents although at the same time refusing any new parts and accessories with which to repair them.
The Appellate Division held that plaintiff was estopped from enjoining a course of business of which it not only presumbly had knowledge, but in which it actively participated. We agree in this conclusion. For, as we have said in Rothschild v. Title Guar. & Trust Co. (204 N. Y. 458, 461 [1912]), “ Where a person wronged is silent under a duty to speak, or by an act or declaration recognizes the wrong as an existing and valid transaction, and in some degree, at least, gives it effect so as to benefit himself or so as to affect the rights or relations created by it between the wrongdoer and a third person, he acquiesces in and assents to it and is equitably estopped from impeaching it.” Assuming that it was actionable to use foreign parts in the “ rebuilt Electrolux ”, plaintiff profited by continuing sales of trade-in machines while at the same time refusing to sell genuine Electrolux parts to respondents. “ One cannot knowingly sanction business methods adopted by a rival, much less invite his competitor to engage in a business and later recover damages for the alleged losses to his business by means which he encouraged.” (William H. Keller, Inc., v. Chicago Pneumatic Tool Co., 298 F. 52, 59 [7th Cir., 1923], cert, denied 265 U. S. 593 [1924]; see, also, Landers, Frary & Clark v. Universal Cooler Corp., 85 F. 2d 46, 49 [2d Cir., 1936]; Bennett & Sons v. Farmers’ Seed & Gin Co., 288 F. 365, 367 [5th Cir., 1923], cert, denied 263 U. S. 704 [1923]; 2 Nims, Unfair Competition & Trade Marks [4th ed., 1947], § 416, p. 1303.) Furthermore, inasmuch as plaintiff is so estopped from complaining of respondents’ use of the trade name Electrolux on old Electrolux machines which had been rebuilt with parts and accessories not manufactured by plaintiff, we do not consider whether any of the non-Electrolux parts are inferior. Nor do we need decide whether under other circumstances the use of those parts in the reconditioning and sale of used *565 Electrolux vacuum cleaners would be an actionable act of unfair competition.
The second question results from the use of the word “ famous ” in the telecasts prior to January 12, 1953. Even if we assume that both courts deemed it misleading, we observe that there is no question but that this practice was discontinued on television after protest by plaintiff about six months prior to the commencement of the action. The Appellate Division took the view that this discontinuance six months prior to the commencement of the action and the absence of any indication in the record that defendants intend to resume the practice render an injunction unnecessary and inappropriate. We are in accord with this result, for the extraordinary relief of an injunction is protection for the future and is not proper unless the injury is imminent. (See 1130 President St. Corp. v. Bolton Realty Gorp., 300 N. Y. 63, 69 [1949]; May’s Furs & Ready-to-Wear v. Bauer, 282 N. Y. 331, 343 [1940].) In addition, the written use of the word “ famous ” in connection with “ Famous Appliance Shops ” does not seem to be in question, especially since, in 1949, plaintiff merely insisted that future radio broadcasts make it clear that the machines had been rebuilt by ‘ * Famous ’ ’. Also, we agree that that part of the injunction which restrained respondents from offering machines which were rebuilt by Vacuum Cleaner Conservation Company without stating that the reconstruction was the work of that particular company was error. Representations that the machines were rebuilt by Parsons Appliance Corporation, Famous Vacuum Shops or Famous Appliance Shops would have no effect on plaintiff unless they tended to impute the work to Electrolux. Therefore, Electrolux is not entitled to have such representations enjoined.
Accordingly, plaintiff’s first cause of action in the nature of “ palming off ” was properly dismissed. Furthermore, inasmuch as it was an equitable cause of action which failed, the trial court could not award damages for the alleged deceptive use of the word “ famous ” on television. “ * * * [W]hen plaintiff pleads an equitable cause of action only and fails to prove the facts relied on to sustain the equity jurisdiction, equity will not retain the case for the purpose of awarding him damages (Doyle v. Allstate Ins. Co., 1 N Y 2d 439, 442 *566 [1956]; see, also, Merry Realty Co. v. Shamokin & Hollis Real Estate Co., 230 N. Y. 316, 324 [1921]; Bradley v. Aldrich, 40 N. Y. 504, 511 [1869].)
Thus, there remains only the second cause of action. The issue there is whether respondents’ sales activities which have been characterized by the Special Term as 1 ‘ bait advertising ’ ’ are actionable and whether an injunction will lie.
The Appellate Division agreed with Special Term that respondents were using the rebuilt machines as a lure to sell a more costly machine not made by plaintiff. However, they reversed those findings of fact which spelled out a sales program lacking any bona fide intent to sell the rebuilt machines but instead planning to disparage it in order to “ switch ” the transaction to other machines at the expense of plaintiff’s reputation and good name. Most of the evidence on those issues was based on the testimony of (a) Adler, the investigator, (b) Forde, the salesman who testified for the plaintiff, and (c) of defendant Sacks. There was a sharp conflict of testimony, particularly between Forde and Sacks. That raised an issue of credibility which was primarily in the hands of the original trier of the facts (Roberts v. Fulmer, 301 N. Y. 277, 285 [1950], supra; Smith v. Smith, 273 N. Y. 380, 383 [1937]). In addition, Forde’s testimony was corroborated by Sack’s own admissions as to the extent of his expenses for selling a $14.95 machine and his admission that he did not pay any compensation to any of his salesmen if and when they sold a “ rebuilt Electrolux ” machine. Accordingly, on the basis of the whole record, we conclude that those findings of the trial court on this issue which were reversed by the Appellate Division are supported by the weight of the credible evidence and should not have been reversed.
Thus, the facts disclose a sales promotion with the following steps:
1. Advertising a ‘' rebuilt Electrolux ” at a very attractive price in order to invite inquiry.
2. Graining admittance to people’s homes under the guise of answering the inquiries, but really for the purpose of selling a much more expensive new machine in competition with Electrolux.
*567 3. “ Switching ” the transaction by “ knocking ” or disparaging the ‘ ‘ rebuilt Electrolux ’ ’ and introducing the new machine.
As we have already indicated, we hold that plaintiff may be deemed to have allowed its trade name and mark to be employed by defendant in the sale of ‘ ‘ rebuilt Electrolux ’ ’ vacuum cleaners. But this is not to say that plaintiff has consented that its name and mark be used as a lure in a “ bait and switch” promotion scheme to sell new vacuum cleaners in direct competition with itself.
Unfair competition was thought at one time to consist generally in “ palming off ”, i.e., “ * * * the sale of the goods of one manufacturer * * * for those of another.” (Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 674 [1901]; see, also, Howe Scale Co. v. Wyckoff, 198 U. S. 118, 140 [1905]; Neva-Wet Corp. v. Never Wet Processing Corp., 277 N. Y. 163,168 [1938].) Protection from “ palming off ” has been extended in our courts to situations where the parties are not even in competition. (See, e.g., Cornell Univ. v. Messing Bakeries, 285 App. Div. 490 [3d Dept.], affd. 309 N. Y. 722 [1955] ; Tiffany & Co. v. Tiffany Prods., 237 App. Div. 801, affd. 262 N. Y. 482 [1933] ; see, also, Fisher v. Star Co., 231 N. Y. 414, 427 [1921], cert, denied 257 U. S. 654 [1921]; Time, Inc., v. Life Color Lab., 279 App. Div. 51 [1st Dept., 1951], affd. 303 N. Y. 965 [1952].) Moreover, in 1918 the Supreme C'ourt of the United States refused to limit relief from unfair competition to cases of “ palming off ” in International News Serv. v. Associated Press (248 U. S. 215 [1918]) where defendant news gathering service was pirating news gathered and reported by plaintiff to eastern newspapers and then transmitting it, as its own product, to western newspapers in time for publication in the west. The Supreme Court commenting that defendant is “endeavoring to reap where it has not sown” (243 U. S. 239) held that plaintiff had property rights in the freshly gathered news which might not be misappropriated by defendant. The principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor has since often been implemented in our courts. (See, e.g., Madison Sq. Garden Corp. v. Universal Pictures Co., 255 App. Div. 459 [1st Dept., 1938]; Mutual Broadcasting System *568 v. Muzak Corp., 177 Misc. 489 [Sup. Ct., 1941]; Dior v. Milton, 9 Misc 2d 425 [Sup. Ct., 1956], affd. 2 A D 2d 878; De Jur-Amsco Corp. v. Janus Camera, 16 Misc 2d 772 [Sup. Ct., 1956].) Our court has recognized that approach in Germanow v. Standard Unbreakable Watch Crystals (283 N. Y. 1, 18 [1940]) and in Fisher v. Star Co. (231 N. Y. 414, 428 [1921], supra).
The growth of the protection against such ‘ ‘ parasitism ’ ’ reflects the requirement that the courts and the law keep pace with the mushrooming increases in business complexity and the concomitant opportunities afforded thereby for chicanery. As the Appellate Division, First Department has said: “ Unfair competition is a form of unlawful business injury. * * * The incalculable variety of illegal commercial practices denominated as unfair competition is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put to use.” (Ronson Art Metal Works v. Gibson Lighter Mfg. Co., 3 A D 2d 227, 230-231 [1st Dept., 1957].) There is no question that this case involves an ingenious scheme put forth by unscrupulous entrepreneurs. But whether it may be enjoined as unfair competition is a difficult problem. Although there are a number of cases in other jurisdictions which have touched on the problem (see, e.g., General Elec. Co. v. Gem Vacuum Stores, 36 N. J. Super. 234 [1955]; Singer Mfg. Co. v. Redlich, 109 F. Supp. 623 [S. D., Cal., 1952]; Admiral Corp. v. Price Vacuum Stores, 141 F. Supp. 796 [E. D., Penn., 1956]), our research has not disclosed any cases where the issue has been squarely presented and decided.
It is true that a manufacturer may not sue “ * * * as a vicarious avenger of the defendant’s customers” (Ely-Norris Safe Co. v. Mosler Safe Co., 7 F. 2d 603, 604 [2d Cir., 1925]). But if defendants’ methods are deceitful and run contrary to accepted business ethics, the public policy of the State is relevant, though perhaps not decisive, in evaluating a claim of unfair competition. Judge Duer observed over a century ago: “ To protect him * * * [the owner of the trade-mark] is not only the evident duty of a court as an act of justice, but the interests of the public, as well as of individuals, require that the necessary protection shall be given.” (Amoskeag Mfg. Co. v. Spear Ripley, 2 Sandf. 599, 605 [1849].) We are in accord with these sentiments and take the view that it is rele *569 vant that activities of the nature of “ bait and switch ” advertising are deceptive and harmful to the public interest. Although we expressly do not comment upon the applicability of criminal prosecution to this case, we need only refer to our recent decision in People v. Glubo (6 N Y 2d 461, decided April 9, 1959) where we upheld a conviction under section 421 of the Penal Law. There, of course, the proof showed an elaborate plan for evading delivery of the advertised machines. However, this appeal, though it does not show such an elaborate plan and absolute intent and plan not to sell the advertised article, certainly discloses that defendants intended to avoid selling the rebuilt machine if possible. But, of course, we need not characterize respondents’ activities as being subject to criminal prosecution in order to label it as injurious to the public. It is sufficient to note that they follow the same general format. In addition, though again we make no comment as to its applicability, we note that the public policy of this State has been recently expressed in section 396 of the General Business Law which empowers the Attorney-General to bring injunction proceedings against advertising “ * * * with the intent, design, or purpose not to sell the merchandise, commodity, or service so advertised”.
The majority of the Appellate Division took the view that an injunction here would impinge upon “ loss leader ” selling where a merchant offers goods at a loss in order to attract customers to whom he can make other more profitable sales. But this is not a situation where a person comes into a store attracted by a bargain and buys other items as well. (See Sunbeam Corp. v. Payless Drug Stores, 113 F. Supp 31 [N. D., Cal., 1953].) Here, the customer, who is, as indicated by the dissenting Justice below, trapped in his own home, is faced with a choice between the rebuilt machine as to which only he made inquiry and the new machine, with the salesman using all of his talents to effectuate the “switch”. Furthermore, it is not common for the average consumer to purchase two vacuum cleaners at one time, which demonstrates how this scheme uses plaintiff’s good name as a weapon against itself in a highly competitive market. Finally, one cannot say that it is normal business ethics for a merchant to discourage sales of items which he has advertised in glowing terms in order to *570 sell different unadvertised goods. Thus, it is difficult to see how an injunction on these facts would impinge upon ordinary “ cut-rate ” or “ loss-leader ” selling practices.
It is easy to understand the natural outrage which would be experienced by the management of a reputable firm upon learning that its name and mark have been employed in a disreputable scheme to gain admission to people’s homes. Aside from the pain caused by possible exposure to the ire of those of the public who would feel cheated as soon as the salesman revealed his true purpose, there is the pain of having one’s good will employed as a weapon in direct competition against one’s self. Furthermore, there are substantial legal damages caused thereby, the continuance of which equity is empowered to prevent. Respondents’ salesmen, as they disparage the rebuilt machine in order to effectuate the ‘1 switch ’ ’, are not likely to attribute any malfunctioning or inferiority to the reconditioning work of their employer rather than to Electrolux. Thus, the public is made susceptible to a jaundiced view of basic Electrolux design or structure. In fact, whether or not the rebuilt machine is a “piece of junk ” or “silly”, the purchasing public is likely to lose confidence in the name and mark of Electrolux. Disparagement or “ Imocking ” is essential to this scheme and it results in real damage to Electrolux. This is further exaggerated by the fact that the advertisement, which sets up the opportunity to “ knock ” the product, makes profuse use of the name “Electrolux” in glowing terms. Thus, it is clear that those persons to whom respondents send their salesmen are conditioned by the advertising to think in terms of Electrolux, and the disappointment inevitably caused by the ‘1 switch ’ ’ or attempted 1‘ switch ’ ’ is bound to be damaging. Similar sentiments were expressed in Bourjois, Inc., v. Park Drug Co. (82 F. 2d 468 [8th Cir., 1936]) where defendant was accused of using falsehoods to divert customers from plaintiff’s nationally known brand of cosmetics to its own brand. The court commented that defamation or false representations concerning another’s product “ * * * when proven to have been made by the clerks of a mercantile corporation as a part of a selling plan or system, constitute unfair competition which may be enjoined at the instance of the person whose good will is injured thereby.” (82 F. 2d, p. 470; see, also, Allen Mfg. Co. *571 v. Smith, 224 App. Div. 187 [4th Dept., 1928].) Moreover, respondents’ acts of unfair competition are to be distinguished from disinterested acts of trade libel. (See, e.g., Reporters’ Assn. v. Sun Print. & Pub. Assn., 186 N. Y. 437 [1906]; Marlin Fire Arms Co. v. Shields, 171 N. Y. 384 [1902]; Tower v. Crosby, 214 App. Div. 392 [1925].)
It is, in a sense, fruitless to examine each individual step in the scheme for actionable wrong. They are so dependent upon one another that one can only say that its entirety is an unfair method of direct competition. “ The various aspects of a plan or scheme, when considered singly, may very well appear innocent. The true nature of the plan or scheme is revealed only when the various aspects are viewed as a totality. ’ ’ (Matter of Castle Hill Beach Club v. Arbury, 2 N Y 2d 596, 608 [1957].) Moreover, this is a scheme which has been made possible only by comparatively recent developments in mass communication and advertising, particularly television, and, thus, it does not fall with precision into any previous groupings of unfair competition. But this is no reason to deny justice or equity. Thus, the trial court was correct in its conclusion that respondents’ activities constitute “bait advertising ” and should be enjoined.
In respect to the damages, however, the provision for an accounting was improper. ‘ ‘ What is true of all actions, is especially true in a suit for unfair competition: disposition of each case peculiarly depends upon the precise state of facts disclosed.” (Roman Silversmiths v. Hampshire Silver Co., 282 App. Div. 21, 27 [1st Dept., 1953], affd. 306 N. Y. 894 [1954].) There is nothing here to indicate that the purchasers of the rival machines thought that they were doing business with Electrolux. Plaintiff urges upon us the case of Warren, Inc., v. Turner’s Gowns, Ltd. (285 N. Y. 62 [1941]) where we said that “ * * * equity will treat the wrongdoer as a trustee for the plaintiff so far as the former has realized profits from its acts ” (285 N. Y., p. 68). But there, the defendant was giving the impression that it was a branch store of the plaintiff. The damage in the instant case is chiefly to the good will and reputation of plaintiff corporation. Thus, it would seem that the measure of damages would be any loss in business which can be traced directly to respondents ’ disparagement of the ‘ ‘ rebuilt *572 Electrolux.” (See Singer Mfg. Co. v. Redlich, 109 F. Supp. 623 [S. D., Cal., 1952], supra.) This will no doubt be most difficult to prove, due to the widespread and shifting nature of the injury which is, of course, one of the reasons dictating injunctive relief. But if the plaintiff is able to prove such damages, it should be given the opportunity to do so. (See Warren, Inc., v. Turner’s Gowns, Ltd., supra; Alexander’s Dept. Stores v. Ohrbach’s, Inc., 269 App. Div. 321 [1st Dept., 1945].)
Accordingly, the judgment of the Appellate Division is modified (1) to reinstate the judgment of the Special Term insofar as it provides that defendants be enjoined from offering any vacuum cleaner under the trade name Electrolux at an attractive price for the purpose of luring prospects with the object of diverting them from the advertised article by disparagement or other like conduct and for the purpose of inducing them to purchase a product or products not manufactured by the plaintiff, and (2) to reinstate that part of the judgment which provides for a reference on the issue of damages but not including defendants’ profits, with costs.
Judges Desmond, Dye, Froessel, Van Voorhis and Burke concur with Chief Judge Conwat; Judge Fuld dissents and votes to affirm.
Judgment modified in accordance with the opinion herein and, as so modified, affirmed, with costs to appellant.