**WEST–FAIR ELECTRIC CONTRACTORS,**
Plaintiff,

v.

**The AETNA CASUALTY & SURETY COMPANY and Gilbane Building Company, Defendant.**

**L.J. COPPOLA, INC., Plaintiff,**

v.

**The AETNA CASUALTY & SURETY COMPANY and Gilbane Building Company, Defendants.**

**Nos. 93 Civ. 7883 (CLB), 93 Civ. 8052 (CLB).**

United States District Court, S.D. New York.

May 20, 1994.

Michael E. Greenblatt, Welby & Welby, White Plains, NY, for West–Fair Elec., Contractors, Inc. plaintiff.

George N. Toplitz and Max E. Greenberg, Cantor, Trager, Toplitz & Herbst, New York City, for Aetna Cas. & Sur. Co. and Gilbane Bldg. Co., defendants.

*MEMORANDUM AND ORDER*

BRIEANT, District Judge.

Defendants in each of these consolidated diversity actions have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Plaintiffs also have moved for summary judgment. Summary judgment is granted to plaintiffs.

Plaintiff, West–Fair Electric Contractors ("West–Fair"), is a New York corporation with its principal place of business in Hawthorne, New York, in this district. Plaintiff L.J. Coppola, Inc. ("Coppola"), is a New York corporation with its principal place of business in Brandon, New York.

Defendants are the Gilbane Building Company ("Gilbane") and the Aetna Casualty & Surety Company ("Aetna"). Gilbane is a Rhode Island corporation with its principal place of business in Providence, Rhode Island. Aetna, a company duly authorized to act as a surety in the State of New York, is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

Aetna, as surety for Gilbane, signed and executed a performance bond and a labor and materials bond on May 28, 1992, in the sum of $13,845,734, guaranteeing prompt payment of moneys due to all persons furnishing the principal with labor and material for the construction of the Westchester Pavilion Project at White Plains, New York ("The Project"). This bond was paid for by Gilbane.

On December 28, 1992, West–Fair and Gilbane entered into a contract for $1,485,000 for West–Fair, as a subcontractor to furnish and install electrical work at the Project. On or about January 5, 1993, Coppola and Gilbane entered into a contract for $205,705 for Coppola, as a subcontractor to furnish and install mechanical and plumbing work at the Project. Thereafter, these subcontractors were authorized to perform extra work amounting to $1,247,548 and $378,204 respectively.

Gilbane paid West–Fair $1,212,250 and Coppola $401,713. These payments represented all sums received by Gilbane from the Project Owner, Fischer–Reese White Plains Associates, L.P. ("Fischer–Reese") on account of the work done through October, 1993 when Gilbane received its last payment from Fischer–Reese. The subcontracts each contain the following clause (hereinafter, "the clause in § 3.2"):

1. Plaintiffs claim they never read the clause in § 3.2, and it seems likely that Aetna also failed to

It is specifically understood and agreed that the payment to the trade contractor is dependent, as a condition precedent, upon the construction manager receiving contract payments, including retainer from the owner ...

(See Defendants' Notice of Motion Ex. 2 § 3.2).

Fischer–Reese is now said to be insolvent. The sub-contracts are silent as to the consequences of the Project Owner's insolvency. Fischer–Reese provided no payment or performance bond for the benefit of Gilbane. However, defendant Gilbane, through Aetna, did provide a payment bond for the benefit of plaintiffs.

■ Defendants argue that the payment clause in the agreements between Gilbane and its subcontractors, quoted above, limits the prime contractor's liability to the subcontractors and hence Aetna's responsibility, to amounts actually paid to the prime contractor by the owner. The issue is controlled by New York law. Defendants rely on the decision in *David Fanarof, Inc. v. Dember Construction Corp.*, 195 A.D.2d 346, 600 N.Y.S.2d 226 (1st Dept 1993). To the same effect, but applying Maryland law, are *Gilbane Building Company v. Brisk Waterproofing Company, Inc.*, 86 Md.App. 21, 585 A.2d 248 (Ct. of Ap.Appls.Md.1991) and *Architectural Systems, Inc. v. Gilbane Building Company*, 760 F.Supp. 79 (D.Md.1991).

■ The *Fanarof* decision may be distinguished with respect to the defendant Aetna because Aetna assumed a direct obligation to plaintiffs by the plain language of its bond:

"The above named Principal and Surety [Aetna] hereby jointly and severally agree with the owner that every claimant that has not been paid in full ... may sue on this bond for the use of such claimant ..." [1]

This Court believes the Court of Appeals of the State of New York would reject the reasoning of *Fanarof,* and would conclude that such a contract provision is contrary to public policy as reflected in New York Lien

do so.

Law. While rulings of intermediate state appellate courts may be persuasive in this Court in diversity cases based upon their reasoning, a federal court is bound only to follow the precedents of the state's highest court and should in all cases not so controlled, follow the view of the law which it finds that the state's highest court reasonably would be expected to adopt. *See Stafford v. International Harvester Co.,* 668 F.2d 142, 148 (2d Cir.1981).

New York public policy has long been that in the interest of permitting building and construction to proceed, subcontractors must be assured of payment in the event of insolvency of upstream parties. New York Lien Law § 3 provides that a subcontractor which performs work or provides material with the consent of or at the request of the owner or its agent will have a lien upon the property for the principal and interest of the value or the agreed price of the labor or materials. The purpose of this provision is to protect the ability of the building industry to function, also enhancing the value of real property. *See Schaghticoke Powder Co. v. Greenwich, etc. R. Co.,* 183 N.Y. 306, 76 N.E. 153 (1905); *Met Painting Co., Inc. v. Dana,* 90 Misc.2d 289, 394 N.Y.S.2d 392 (1977).

New York Lien Law § 34 provides, subject to exceptions which are inapplicable here:

> Notwithstanding the provisions of any other law, any contract, agreement or understanding whereby the right to file or enforce any lien created by [the statute] is waived, shall be void as against public policy and wholly unenforceable.

Permitting a contractor to avoid its obligations to pay a building subcontractor by means of an exculpatory provision limiting liability to payments to the prime contractor by a project owner would be tantamount to defeating the objectives of § 34, and is an indirect way to create and enforce what is in effect a forbidden waiver.[2]

Section 34 was adopted by L.1975, ch. 74. Its purpose was "protection of sub-contractors and materialmen who are not economi-

cally strong enough to resist demands that they waive a valuable statutory right created specifically for their protection." *Rotodyne, Inc. v. Consolidated Edison,* 85 Misc.2d 347, 378 N.Y.S.2d 899, 902 (Sup.Ct. Westchester Co. 1975), *rev'd on other grounds (lack of retroactivity),* 55 A.D.2d 600, 389 N.Y.S.2d 387 (2d Dept.1976).

The New York Court of Appeals treats statutes such as the New York Lien Law as a source of public policy persuasive beyond the scope of their literal application as commands. See *Electrolux v. Val–Worth,* 6 N.Y.2d 556, 569, 161 N.E.2d 197, 204, 190 N.Y.S.2d 977, 987 (1959); *Schuster v. City of New York,* 5 N.Y.2d 75, 85–86, 154 N.E.2d 534, 540, 180 N.Y.S.2d 265, 273–74 (1958); *Zendman v. Harry Winston, Inc.,* 305 N.Y. 180, 189 n 3, 111 N.E.2d 871 (1953); Stone, "The Common Law in the United States," 50 Harv.L.Rev. 4, 12–18 (1936); Note, "The Legitimacy of Civil Law Reasoning in the Common Law: Justice Harlan's Contribution," 82 Yale L.J. 258 (1972).

Plaintiffs have established that they performed all terms and conditions of their contract and are owned $1,520,298 and $225,206 respectively. The Clerk will enter judgment in favor of plaintiff West–Fair in the amount of $1,520,298 and in favor of Coppola in the amount of $225,206, against both defendants jointly and severally in each instance with pre-judgment interest commencing twenty (20) days from the date of filing suit.

If an appeal is taken from this judgment, the Second Circuit may wish to consider requesting that the Court of Appeals of the State of New York answer a certified question under New York Rules of Court § 500.17 concerning whether a clause in an agreement between a building industry subcontractor and a prime contractor, absolving the latter of liability to the extent the prime contractor is unpaid by the owner of a project for the work performed by the subcontractor, is void as against public policy or forbidden by § 34 of the Lien Law. Unfor-

---

**2.** This is because a mechanic lien by a subcontractor cannot be "enforced" unless payment is "due" to the subcontractor, and under the clause in § 3.2 nothing will ever become "due" for payment unless Fischer–Reese pays the general contractor. The economic effect is the same as a waiver of lien.

tunately, the right to certify is not granted to the federal trial courts.

So Ordered.