OPINION OF THE COURT
Charles Edward Ramos, J.
In this action by plaintiff Louis Capital Markets, L.E (LCM) against defendants REFCO Group Ltd., LLC, Alan Fellous, Michael Benisty, Henri Condron, Benjamin Chouchane, Lionel Mellul, and Marcos Pagani, defendants move, pursuant to CPLR 3016 (b) and 3211 (a) (7), to dismiss for failure to state a claim for: (1) tortious interference with employment agreements; (2) aiding and abetting the breach of fiduciary duties of LCM’s employees’ fiduciary duties to LCM; (3) unfair business practice; (4) breach of implied-in-fact contract; (5) tortious interference with an economic advantage; (6) conversion and misappropriation of intangible business assets and opportunities; (7) breach of agreements; and (8) breach of fiduciary duties by LCM’s former employees.
In addition, defendants move, pursuant to CPLR 3211 (a) (8), arguing the court lacks personal jurisdiction over Mr. Fellous and REFCO Group.
Plaintiff cross-moves pursuant to CPLR 3211 (e), 1001 and 1024 to add REFCO Securities LLC as a defendant.
Background
LCM brought this action arising from alleged corporate espionage by a mole placed in LCM’s offices by its new competitor REFCO which then pirated LCM’s key employees. LCM alleges that defendants interfered with LCM’s agreements with its for *285 mer employees and misappropriated LCM’s trade secrets and business opportunities.
In March of 2001, REFCO Paris terminated its relationship with Raymond James & Company. On March 27, 2001, LCM and REFCO[1] entered into a clearing agreement, in which LCM agreed to handle and execute equity security transactions for REFCO’s European customers (the clearing agreement).[2] LCM and REFCO Paris began conducting business under the clearing agreement, and asked their attorneys to draft a writing reflecting it. During a year and a half of negotiations, LCM and REFCO Paris exchanged numerous drafts of an introducing broker agreement (the broker agreement).
In the winter of 2001, while negotiations regarding the broker agreement were still in progress, Mr. Benisty (who was then employed at REFCO Paris) approached LCM about the possibility of working for LCM in New York. The principals of LCM rejected this offer because it would be in violation of the broker agreement. Mr. Fellous, president of REFCO Paris, urged LCM to hire Mr. Benisty, who was hired by LCM on February 5, 2002, allegedly as an accommodation to Mr. Fellous.
Throughout the 2002 year, Mr. Benisty kept in touch with Mr. Fellous on a daily basis, despite the fact that his duties at LCM did not require such communication. In the meantime, the 18-month negotiations regarding the broker agreement collapsed on December 3, 2002, when Mr. Fellous and REFCO refused to sign the final definitive version because of the noncompete clause that was inserted. Three days later, Mr. Benisty revealed to the principals of LCM that REFCO intended to duplicate LCM’s business in New York.
As soon as LCM discovered the alleged scheme, it fired Mr. Benisty on December 6, 2002. Shortly thereafter, REFCO recruited two other LCM key employees: Mr. Chouchane (hired on Dec. 9, 2002) and Mr. Condron (hired on Dec. 31, 2002). As a result, LCM acted quickly to ensure that its remaining employees would not be recruited and required them to sign new employment contracts with various restrictive covenants. At the time, Messrs. Mellul and Pagani were still working for LCM and *286 signed the new employment contracts. However, on February 5, 2003, REFCO hired both of them.
According to LCM, REFCO and Mr. Fellous had concocted a plan to persuade key employees to move over to REFCO by offering them lucrative compensation packages, all out of proportion with industry standards. LCM further alleges that, throughout 2002, Mr. Benisty was engaged in corporate espionage for REFCO in order to execute the plan.
Discussion
Motion for Failure to State a Cause of Action
CPLR 3211 (a) (7) states that “[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . . the pleading fails to state a cause of action.”
On a motion to dismiss for failure to state a claim, the court is “concerned with whether the pleading states a cause of action rather than the ultimate determination of the facts” (Stukuls v State of New York, 42 NY2d 272, 275 [1977]) and such motion will not be granted, unless the moving papers conclusively establish that no cause of action exists. (Chan Ming v Chui Pak Hoi, 163 AD2d 268 [1st Dept 1990].)
On a motion to dismiss, pursuant to CPLR 3211, the court should construe the pleadings in a liberal fashion by accepting the facts alleged in the complaint and interpreting them in a light most favorable to the plaintiff. (Leon v Martinez, 84 NY2d 83, 87 [1994].)
When it comes to satisfying the heightened pleading standards required under CPLR 3016 (b) for a cause of action based “upon . . . breach of trust,” the pleadings will be considered sufficient so long as they provide “sufficient detail to inform defendants of the substance of the claims.” (Kaufman v Cohen, 307 AD2d 113, 120 [1st Dept 2003].) Thus, CPLR 3016 (b) does not require that the allegations include minute details pertaining to the conduct alleged.
Second Cause of Action—Aiding and Abetting the Breach of Fiduciary Duties against Mr. Benisty
A claim for aiding and abetting a breach of fiduciary duty requires: “(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach.” (Kaufman v Cohen, 307 AD2d 113, 125 [1st Dept *287 2003].) “Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby.” (Wechsler v Bowman, 285 NY 284, 291 [1941], rearg denied 286 NY 582 [1941].) In addition, New York courts require that the aider or abettor “substantially assists” the party in breach. “A person knowingly participates in a breach of fiduciary duty only when he or she provides ‘substantial assistance’ to the primary violator.” (Kaufman, supra at 126.)
To the extent the allegations are related to a breach of fiduciary duties by Mr. Mellul and Mr. Pagani, they should be dismissed. As explained below (eighth cause of action), the claim against Mr. Mellul and Mr. Pagani for breach of fiduciary duties should be dismissed. Therefore, the court cannot sustain a claim for aiding and abetting such a breach.
Regarding the aiding and abetting of a breach by the other LCM employees (i.e., Messrs. Benisty, Chouchane and Condron), the cause of action should be sustained.
The first requirement mentioned in the Kaufman case has been satisfied by LCM, given that LCM has sufficiently pleaded that Messrs. Benisty, Chouchane and Condron breached their fiduciary duties (see analysis of eighth cause of action below).
As for the second requirement, LCM has also sufficiently pleaded that Mr. Benisty knowingly induced or participated in the breach. Plaintiff alleges that Mr. Benisty had carefully planned a scheme by which Mr. Benisty would seek employment with LCM for the sole purpose of learning their trading strategies. LCM further alleges that Mr. Benisty was engaged in the recruitment of Messrs. Chouchane and Condron for their scheme, while still employed by LCM. This satisfies the pleading requirement of “substantial assistance to the primary violator.” LCM has sufficiently alleged that Mr. Benisty knowingly participated in Messrs. Chouchane and Condron’s breach of their fiduciary duties. In addition, LCM has satisfied the third requirement by alleging damages stemming from the alleged aiding and abetting of the breach of fiduciary duty. Plaintiff is entitled to litigate its claim that it lost accounts due to the misappropriation of its trade secrets. Therefore, the motion to dismiss the aiding and abetting of a breach by the other LCM employees (i.e., Messrs. Benisty, Chouchane and Condron) against Benisty is denied.
*288 Third Cause of Action—Unfair Business Practices against Mr. Benisty
The third cause of action for unfair business practices is sustained.[3]
“An injury to a person’s business by procuring others not to deal with him, or by getting away his customers, if unlawful means are employed, such as fraud or intimidation, or if done without justifiable cause, is an actionable wrong.” (Duane Jones Co. v Burke, 306 NY 172, 190 [1954].) In particular, New York courts have long ago recognized the common-law tort for unfair business practices. Since the law of “unfair competition” stresses the element of unfairness rather than the element of competition and the term is generally applied to any form of unlawful business injury (see Electrolux Corp. v Val-Worth, Inc., 6 NY2d 556, 568 [1959]), the labeling of an action as “unfair business practices” rather than “unfair competition” does not change the substance of the claim.
Originally, the doctrine was applied on a narrower basis, and was limited to cases involving the practice of “palming off’ by which a competitor would label and market the product of another as his own. (Electrolux Corp., supra at 567.) Later on, the United States Supreme Court expanded the reach of this doctrine. In International News Serv. v Associated Press (248 US 215, 239 [1918]), the Supreme Court held that a cause of action for unfair competition can exist when a business misappropriates the skill, expenditures and labors of a competitor. Although New York courts have not explicitly defined what types of actions qualify as unfair competition, they have accepted the misappropriation of another’s commercial advantage as a cornerstone of the tort of unfair competition. (Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663, 671 [1981], rearg denied 54 NY2d 753 [1981].)
Here, LCM alleges that Mr. Benisty carefully planned and executed a scheme by which Mr. Benisty would learn LCM’s unique trading strategies with the intention of misappropriating these strategies for the benefit of REFCO. LCM alleges that Mr. Benisty had complete access to their trading strategies and that REFCO Paris has acknowledged in the past its inability to adequately service its European clients in the area of United States equity securities. By sending Mr. Benisty to LCM, REFCO *289 Paris would allegedly be able to learn LCM’s strategies and implement them independently for its clients, thus bypassing the need for LCM’s services. The fact that these strategies are only intangible assets is completely irrelevant. New York courts have held that the misappropriation and improper use of another’s trade secrets is sufficient to constitute a claim for unfair competition. (CBS Corp. v Dumsday, 268 AD2d 350, 353 [1st Dept 2000].)
Eighth Cause of. Action—Breach of Fiduciary Duty (Against Former LCM Employees and Mr. Benisty)
The claim for breach of fiduciary duty against all former LCM employees must be separated into two groups: (1) Messrs. Benisty, Chouchane and Condron, and (2) Messrs. Mellul and Pagani. The claim against Messrs. Benisty, Chouchane and Condron should be sustained, whereas the claim against Messrs. Mellul and Pagani should be dismissed.
An employee owes a fiduciary duty to his employer as a matter of law and is “prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.” (Lamdin v Broadway Surface Adv. Corp., 272 NY 133, 138 [1936].) The fact that Messrs. Benisty, Chouchane and Condron did not have formal employment contracts with LCM is irrelevant. They owed a fiduciary duty of loyalty and good faith to LCM as a matter of law for the period they were employed by LCM.
LCM has sufficiently alleged that Mr. Benisty breached his fiduciary duties as an employee by alleging that he was a “mole” who accepted employment with LCM for the sole purpose of gathering information and resources for REFCO. LCM has alleged that, while Mr. Benisty was working for them, he was simultaneously involved in corporate espionage for REFCO by learning LCM’s trading strategies and befriending their key employees. LCM has also sufficiently alleged that Messrs. Chouchane and Condron joined Mr. Benisty in this scheme while they were still working for LCM, thus breaching their fiduciary duties too.
The allegations here also satisfy the heightened pleading standard required under CPLR 3016 (b), because they sufficiently inform the defendants of the substance of the claims against them. In cases involving allegations of fraud based on CPLR 3016 (b), New York courts have held that the pleading requirements of CPLR 3016 (b) should not be interpreted strictly since *290 “it may be impossible to state in detail the circumstances constituting a fraud . . . since such facts are necessarily peculiarly within the knowledge of the [defrauding] party” {Kaufman, supra at 121 [internal quotation marks omitted]). The same logic should apply here. Although this is not a claim for fraud, LCM has alleged a sophisticated and detailed scheme of corporate espionage. It is obvious that the details of this plan have yet to be uncovered since, if it is true, they were probably known to very few people at REFCO. Nevertheless, this does not preclude LCM from its fundamental right to bring a legal action if it has good reason to believe such a scheme was in place.
Regarding Messrs. Mellul and Pagani, the allegations about their involvement in the scheme are insufficient. Although they both terminated their employment with LCM and thereafter began working for REFCO Securities LLC, they did not resign at the same time as Messrs. Benisty, Chouchane and Condron, thus separating them (at least on the surface) from the alleged scheme in which the rest of the former employees were involved. In fact, they stayed on with LCM for more than a year after the others left and, as explained above, they did not violate their employment agreements with LCM. New York courts have consistently held that an employee is not restricted from accepting employment with his former employee’s competitor, as long as he does not violate the terms of his employment agreement and does not breach any fiduciary duties owed to his former employer. (Kaumagraph Co. v Stampagraph Co., 235 NY 1, 9 [1923].) Accordingly, the claim against them for breach of fiduciary duty should be dismissed.
Accordingly, it is ordered that defendants’ motion to dismiss the action against Fellous is held in abeyance for 20 days from service of this order with notice of entry. Upon the filing, with the court, of a certificate from a governmental authority certifying the notary’s authority, or a replacement affidavit, the action against Fellous shall be dismissed; and it is further ordered that defendants’ motion to dismiss is granted and the action is dismissed against REFCO Group; and it is further ordered that plaintiffs cross motion to add REFCO Securities LLC is denied; and it is further ordered that the first, fourth, fifth, sixth, and seventh causes of action are dismissed; and it is further ordered that the motion to dismiss the second cause of action against Mr. Benisty, with regard to the breach of fiduciary duties by Messrs. Benisty, Chouchane and Condron is denied, but it is *291 granted to the extent that it alleges breaches by Mellul and Pagani; and it is further ordered that the motion to dismiss the third cause of action against Mr. Benisty is denied; and it is further ordered that the motion to dismiss the eighth cause of action against Messrs. Benisty, Chouchane and Condron is denied; and it is further ordered that the action in all other respects continues.

. According to the complaint, REFCO entered the clearing agreement with LCM. However, the drafts of the broker agreement indicate REFCO Paris as a party. This is highly disputed.

. No written document entitled “Clearing Agreement” was provided to the court as LCM admits on page 3 of Benhamou’s affidavit that it was an oral agreement.

. Since plaintiff does not bring its claim under General Business Law § 349, the court does not address defendant’s opposition on this basis.