No. 13,051.

PEOPLE EX REL. ATTORNEY GENERAL *v.* ARMSTRONG.
(17 P. [2d] 545)

Decided December 12, 1932.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. OLIVER DEAN, Assistant, Mr. RALPH L. CARR, for petitioner.

Mr. PHILIP HORNBEIN, for respondent.

*En Banc.*

PER CURIAM.

The court being divided three for conviction and three for acquittal, Mr. Justice Burke not participating, the proceedings must stand dismissed.

By MR. JUSTICE MOORE:

Maude Armstrong was charged with contempt in a disciplinary proceeding against a Colorado attorney instituted by the attorney general on order of this court. Neither this disciplinary action nor this contempt charge was caused to be instituted by the interposition or action of our grievance committee. After issues joined, the cause was referred to a referee, Hon. Stanley T. Wall-

bank, who filed his report September 22, 1932, finding respondent guilty of contempt of this court, whereupon respondent was allowed twenty days within which to file exceptions thereto. No exceptions were filed within that time.

The referee's report discloses that on or about March 25, 1929, respondent appeared before a certain grand jury sitting in and for the City and County of Denver and charged a Denver lawyer with gross unprofessional conduct, said testimony being given for the purpose of being, and to be, used in connection with disbarment proceedings against him.

In January, 1930, disbarment proceedings (No. 12,543) were instituted based, inter alia, upon said testimony, and therein respondent swore in effect that her sworn statements made before the grand jury were untrue.

The referee's report which sets forth in detail the charge and testimony herein and that given before Mr. Justice Burke, referee in the disbarment proceedings, should be approved and the respondent, Maude Armstrong, should be adjudged guilty of criminal contempt of this court.

MR. JUSTICE CAMPBELL and MR. JUSTICE ALTER concur.

By MR. JUSTICE BUTLER:

When summoned to appear before the grand jury, the respondent, on March 25, 1929, gave testimony tending to show that J. W. Kelley was guilty of unprofessional conduct in connection with a transaction referred to in the record as "the shower of jewels." In October, 1931, she was called as a witness at the hearing of the disbarment charges against Kelley. She testified that since giving her testimony before the grand jury her memory became impaired by a nervous breakdown, and that because of that fact she could not remember important matters to which she had testified before the grand jury. Referring to the charge concerning the "shower of

jewels" transaction, the referee in the Kelley disbar-
ment proceeding said, in his report: "Proof of the ma-
terial facts of this charge depended upon the truth of
that testimony [i. e., that given before the grand jury],
but when called to the stand by the People herein the wit-
ness maintained that her mind had become a blank * * *.
Some days later she was recalled * * *, and, having
meanwhile been given an opportunity to read the tran-
script of her testimony before the grand jury, a further
unavailing attempt was made to refresh her recollection.
She ascribed her misfortune to a nervous breakdown and
a divorce suit. It follows that there is no competent or
credible evidence to support this charge."

In the information filed herein it is alleged that the re-
spondent "had not lost her memory by reason of illness,
or for any other cause." In her answer, the respondent
alleges, in part, as follows: "That in answering the
questions propounded to her as she did, she did so to the
best of her ability and recollection, and if she had an-
swered otherwise than she did, she would have violated
her oath, in that she would have testified to matters not
within her distinct recollection; that at the time she so
testified before the Referee, she only had a vague recol-
lection of the matters concerning which she was interro-
gated, and her mental impression thereof was befogged
through no fault of her own, * * *. Respondent felt at
the time she testified before the Referee of this Honor-
able Court, and she now feels, that she could not consci-
entiously testify to any matter, thing or transaction un-
less she was positive thereof in her own mind; that if she
had testified positively concerning matters which were
obscure in her mental consciousness and concerning
which she did not have a clear, positive mental impres-
sion—her statement so made would obstruct and impede
the administration of justice. She further avers that the
statements made before this Honorable Court were the
truth so far as she recalled and recollected the same. She
especially disavows any intent or purpose to be contemp-

tuous of the dignity of this Honorable Court." On August 2, 1932, at the hearing before the referee in this contempt proceeding, respondent's physician testified that he began treating the respondent on May 7, 1929, and that she remained under his care for three years. He described her symptoms, and said that during that time she was under a great physical and mental strain, "and could very easily lose her memory or judgment for the time being"; that at the time he testified her condition was better; that the nature of her affliction was not such as necessarily to impair her memory permanently.

The evidence, in my opinion, does not justify a finding that the respondent's testimony before the referee in the Kelley disbarment case was false. A careful examination of the record convinces me that the evidence is overwhelmingly to the contrary.

If we assume that the respondent testified falsely before the grand jury, that would not be contempt of *this* court. The grievance committee of the Colorado Bar Association has been made an agency of this court for the purpose of investigating charges of unprofessional conduct by members of the bar, with power to bring and prosecute disbarment and other disciplinary proceedings. Supreme Court rules 84a-84j. The grand jury, however, is not an arm of *this* court for that or any other purpose; nor has it anything whatever to do with the disciplining of members of the bar. Misconduct before the grand jury would be a matter for the district court to deal with. I cannot agree with the referee's finding that the testimony given by the respondent when, in obedience to a summons, she appeared before the grand jury, was given for the purpose of causing the institution of a disbarment proceeding against Kelley. Indeed, if she had done that, it would have been an attempted abuse of the grand jury proceeding. The respondent did not file charges with, or testify before, the grievance committee, nor did she make any statement to any of the members of that committee.

In my opinion, the proceeding should be dismissed.

MR. CHIEF JUSTICE ADAMS concurs in this opinion.

By MR. JUSTICE HILLIARD:

As in *People v. Thompson*, 91 Colo. 566, 17 P. (2d) 538, and *People v. Thierry*, 91 Colo. 581, 17 P. (2d) 543, so here I would discharge the respondent. In the Thompson inquiry I discussed the law and reviewed many authorities. What I said there is generally in point here, as are observations in the Thierry case. Here, as in those cases, the respondent is charged with contempt. The charge grew out of the disbarment proceedings mentioned in the other cases. And, as in those instances, the charge against the attorney was not proved.

It is claimed that respondent's testimony in the disbarment proceeding is at variance with testimony she gave before a grand jury, involving, to a considerable degree, the same facts. The testimony given before the grand jury was in March, 1929; charges were filed against the attorney in January, 1930, and in February, 1931, respondent testified in the disbarment proceeding. On the assumption of the referee in the contempt proceeding that the testimony before the grand jury was given for the purpose, and to be used, in connection with the disbarment proceedings referred to, he finds that respondent is guilty of criminal contempt and recommends that she be fined in the sum of $500. There was no testimony to the effect that the grand jury inquisition was for the purpose mentioned, and that it could not be so directed is commonly known. On the charge of contempt the finding is that respondent's stories, one before the grand jury in March, 1929, and the other before this court in February, 1931, do not harmonize, but the referee does not submit a finding on the point, nor did any witness venture testimony from which we may determine which story is true. May we thus deduce contempt? The referee says we may punish contempts committed in our

presence, but of what contempt was respondent guilty in our presence? The referee does not find that anything respondent said at the hearing conducted by this court was false, and analysis of her testimony does not reveal perjury. Only as the result of an independent investigation, conducted long after respondent had testified in the disbarment proceeding, are we advised of the claimed discrepancies between her testimony then and that given before a grand jury some two years before. I submit that however such variance may be regarded, for perjury, or whatever, by all the books it does not constitute contempt.

As to this particular respondent, it appears from the undisputed evidence given by J. N. Hall and Leo V. Tepley, physicians, qualifying and testifying as experts before the referee in the contempt proceeding, that at all times important to this investigation she was, and now is, mentally irresponsible. To adjudge this distraught woman to be in contempt, and mulct her in a fine, or, if she cannot pay, to imprisonment, would illy become any court; on the contrary, to discharge her would mark the court's appreciation of the limitations which ought to attend exercise of judicial power, and conform to the spirit of free institutions.