No. 25268

People of the State of Colorado, ex rel. Duke W. Dunbar, Attorney General v. Gym of America, Inc., a Colorado corporation, d/b/a Gym of Denver; Vern Bickel, President of Gym of America, Inc.; Betty Ross; J. R. Jones; Barbara Clifton; Charley Doe, whose true name is unknown, and Rob Roe, whose true name is unknown

(493 P.2d 660)

Decided January 24, 1972.          Rehearing denied February 7, 1972.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, C. Patrick Carrico, Assistant, for plaintiffs-appellants.

Alperstein and Plaut, .P.C., Arnold Alperstein, Susan G. Barnes, for defendants-appellees.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The parties in this action appear in the same order as in trial court. The Colorado attorney general initiated this lawsuit by filing a complaint in Jefferson County District Court asking for a preliminary and permanent injunction against Gym of America, Inc., for alleged violations of the Colorado Consumer Protection Act, 1969 Perm. Supp., C.R.S. 1963, 55-5, *et seq.* The People of the State of Colorado, ex rel. Duke W. Dunbar, Attorney General, who appeal from a decision by the trial court holding the Consumer Protection Act to be unconstitutional, will hereinafter be referred to as appellants. Gym of America, Inc., defendant below, will be referred to as Gym of America or appellee. The Colorado Consumer Protection Act will be cited by Chapter, Article, and Section number or by Section number only.

The complaint filed by the attorney general alleged the following facts and circumstances. Gym of America is a Colorado corporation which is engaged in the business of operating a health club and gymnasium. It provides personal services and the use of special facilities to its customers, whom it refers to as "members." From time to time, in order to increase club membership, Gym of America has advertised its services through newspapers, personal phone calls, or direct mailings to potential customers. Occasionally these advertisements have indicated that special reduced rates and free memberships were being offered to those who made further inquiry. In 1969 and 1970, some of those who were interested in these "bargains" later complained to the state attorney general's office that the advertisements had been misleading or deceptive. Most significantly with respect to this lawsuit, it was claimed that Gym of America had been responsible for at least four distinct types of false advertising.

First, it was alleged that the appellee refused to comply with the terms of its advertised offers when customers agreed to purchase services at the reduced rates. Second, it was claimed that appellee informed those who were interested in the advertised health course that the advertised terms would be available only to those who would agree to thereafter

become regular and paying club members. Third, it was contended that appellee stated to those who responded to the advertisements that club privileges on terms as advertised would not be available as the offered membership was too short in duration to be of benefit, but that a membership of a much longer period of time would be helpful. Fourth, it was alleged that after potential customers had been told over the telephone that they had received a "free" $60 health club membership, they were advised by Gym of America that this membership was not available independently and only applied as a discount on a regular membership.

On the basis of the above allegations, the attorney general has applied for a preliminary and permanent injunction under Section 7(1) of the Colorado Consumer Protection Act seeking to prohibit Gym of America from engaging in the aforementioned advertising methods. In his complaint the attorney general claimed that by advertising in the above manner, Gym of America had engaged in "deceptive trade practices while in the course of its business" in violation of Section 2 of the Act. Specifically, it was alleged that the four advertising techniques mentioned above were "deceptive" because Gym of America had (1) advertised goods or services with "intent not to sell them as advertised"; 1969 Perm. Supp., C.R.S. 1963, 55-5-2(1)(a)(j); (2) employed "bait and switch" advertising, 1969 Perm. Supp., C.R.S. 1963, 55-5-2(1)(a)(o)(i); (3) employed "bait and switch" advertising which was accompanied by "disparagement" in any respect of the advertised product or the terms of sale, 1969 Perm. Supp., C.R.S. 1963, 55-5-2(1)(a)(o)(i), (o)(iii); and (4) employed "bait and switch" advertising which was accompanied by "tie-in sales," 1969 Perm. Supp., C.R.S. 1963, 55-5-2(1)(a)(o)(iv).

After the attorney general's complaint was filed, appellee filed its answer and moved for dismissal. The trial court thereupon ordered dismissal of the complaint on the grounds that the Colorado Consumer Protection Act was unconstitutional. Without citation of authority or further elaboration of its reasoning, the trial court concluded that the Act was

unconstitutional because: "(1) the statute is unconstitutionally vague and fails to set an adequate standard by which one's conduct can be measured. . . to the extent that it fails to inform an individual as to what acts are allowed and what acts are prohibited; (2) the statute is an attempted exercise of power in excess of that which a state may lawfully do under its police powers; and (3) the procedures provided for enforcement of the statute are violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution in that no guidelines or standards are provided to the attorney general relative to enforcement thereof and enforcement thereunder can be and in the instant case is, arbitrary."

██ We disagree with the trial court's ruling. We hold the Colorado Consumer Protection Act is sufficiently definite to withstand the constitutional onslaught made here; that it is a proper exercise of police power; and that its enforcement procedure does not violate the equal protection clause of the federal and state constitutions.

I.

The trial court held that the Colorado Consumer Protection Act is so vague and uncertain that it does not furnish a standard sufficiently definite to give notice of meaning to persons affected thereby and is thus in contravention of state and federal due process. In support of this conclusion, appellee claims that certain key words in four sections of the statute are either not defined at all, or are so inadequately defined that one cannot determine which trade practices are allowed and which are prohibited.

First, appellee is alleged to have violated Section 2(1)(a)(j), which makes it a deceptive trade practice to "advertise goods or services with intent not to sell them as advertised." "Advertisement" is defined in the "definitions" section of the statute as including "the attempt by publication, dissemination, solicitation, or circulation, visual, oral, or written, to induce directly or indirectly any person to enter into any obligation or to acquire any title or interest in any property." 1969 Perm. Supp., C.R.S. 1963, 55-5-1(10). However,

appellee claims that although the legislature has defined the noun "advertisement," it has not defined the verb "advertise" or "advertised." Since Section 2(1)(a)(j) makes it a deceptive trade practice to "advertise" goods with intent not to sell them "as advertised," since "advertise" and "as advertised" are not defined by the statute, and since the definition of the noun "advertisement" in the statute is considerably broader than the "commonly accepted" definition of the verb "advertise," appellee asserts that it is accused of engaging in a particular deceptive trade practice the meaning of which cannot be ascertained.

Second, Gym of America is alleged to have employed "bait and switch" advertising accompanied by "disparagement" of the advertised product or terms of sale in violation of Sections 2(1)(a)(o)(i) and (o)(iii). Appellee successfully argued in trial court that "bait and switch" advertising is not a standard or prohibited conduct which meets the constitutional requirements of specificity and certainty. Appellee also contends that "disparagement" is not defined anywhere in the statute, does not have any one widely understood meaning, and is therefore too vague to provide a measurable standard of conduct.

Finally, the attorney general seeks to enjoin Gym of America from employing "bait and switch" advertising in connection with required "tie-in sales" in contravention of Sections 2(1)(a)(o)(i) and (o)(iv). Again, appellee attacks the statute's "tie-in sales" terminology on the basis that it is not adequately defined in the Colorado Consumer Protection Act, has no commonly accepted meaning, and is not susceptible to judicial interpretation. Like "advertise," "bait and switch," and "disparagement," the term "tie-in sales" is thus claimed to be so vague and uncertain as to violate the due process clauses of the state and federal constitutions.

Appellee claims that a statute such as the Colorado Consumer Protection Act, which acts as a guide to future conduct, is too indefinite because, it contends, "men of common intelligence" must necessarily guess at the meaning of the Act. *Connally v. General Construction Co.,* 269 U.S.

385, 46 S.Ct. 126, 70 L.Ed. 322; *Winters v. N.Y.,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840; *Champlin Refining Co. v. Corporation Commission of Oklahoma,* 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062. It further claims that Colorado has followed the "men of common intelligence" standard in *Memorial Trusts, Inc. v. Beery,* 144 Colo. 448, 356 P.2d 884. Appellant counters this test by asserting that the standard for unconstitutional vagueness is an "adjudicative" test — one which measures a statute's vagueness according to whether it furnishes a guide to enable lawyers to contest the applicability of rules to their clients and which permits courts to adjudicate rights and duties. Appellant cites the Colorado case of *Flank Oil Co. v. Tennessee Gas Transmission Co.,* 141 Colo. 554, 349 P.2d 1005, as being persuasive precedent for this "adjudicative" test.

When a civil statute, such as the Colorado Consumer Protection Act, is meant to serve both as a guide to future conduct and as a guide to the Act's enforcement officers, it is clear that some substantial degree of definiteness should be required. But rather than blindly adhering to either a "man of common intelligence" or "adjudicative" test, a court should look to the incidents of the statute itself in order to determine whether its terms have a sufficiently definite and understandable meaning. Specifically, a court should make reference to the group of persons to whom the statute applies, the kind of sanction imposed, the nature of the statute's subject matter, and the economic and social desirability of the statute's particular legislative policy. This is not an exclusive list of statutory incidents which a court should always examine. It is merely those important aspects of the Colorado Consumer Protection Act which we find to be controlling in this case.

We note that this statute is concerned with proscribing certain kinds of specific *future* conduct. As such, the statute provides sanctions of purely prospective effect, such as the restraining orders, injunctions, and assurances of discontinuance found in Section 7. This, of course, means that when the attorney general seeks an injunction he is not

demanding that the defendant be punished with a penal sanction, but rather that the defendant be restrained from acting unlawfully in the future. It is unnecessary that such a statute provide absolutely precise warning before its equitable sanctions are applied. *See Mahler v. Eby,* 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549. The adjudication itself provides notice to the defendant, and is prospective in its application. The result is that the defendant is provided with the explicit terms of the decree or order to tell him what practices are allowed without incurring penalties. Therefore, as will be seen below, a statute such as this whose sanctions are injunctions or assurances of discontinuance need not be as precise as a statute where the sanction is penal or criminal.

One should also take note of the statute's subject matter. 1969 Perm. Supp., C.R.S. 1963, 55-5, *et seq.* is the Colorado version of the Uniform Deceptive Trade Practices Act. It is clearly enacted to control various deceptive trade practices in dealing with the public and as such is obviously designed to both declare and enforce an important public policy. More significantly, the utility of general standards of actionability with respect to deceptive trade practices has been repeatedly recognized. *See Eastman Kodak Co. v. Fotomat Corp.,* 317 F.Supp. 304 (D.C. Ga.); *Audio Fidelity Inc. v. High Fidelity Recordings,* 283 F.2d 551 (9th Cir.) *See also* Richard E. Dole, Jr., *The Uniform Deceptive Trade Practices Act: Another Step Towards a National Law of Unfair Trade Practices,* 51 Minn. L.Rev. 1005 (1967).

Moreover, it is fundamental that legislation is entitled to a presumption of constitutionality and that the burden is on the person alleging invalidity to prove it beyond a reasonable doubt. *Lindsley v. Natural Carbonic Gas Co.* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369; *Flank Oil Co. v. Tennessee Gas Transmission Co.,* 141 Colo. 554, 349 P.2d 1005; *People ex rel. Rogers v. Letford,* 102 Colo. 284, 79 P.2d 274; *Thiele v. City and County of Denver,* 135 Colo. 442, 312 P.2d 786.

Not only, then, does appellee have a heavy burden to overcome with respect to this statute's alleged unconstitu-

tionality, especially in light of its particular subject matter, but also this Court has an equally certain duty to construe the statute in such a way that it is not void for vagueness whenever a reasonable and practical construction can be given to its language.

The question before the Court now is whether the four challenged phrases — "advertise," "bait and switch," "disparagement," and "tie-in sales," as used in the Consumer Protection Act are so vague as to render their meaning intelligible to people affected by them. We believe that all four terms are not unconstitutionally vague.

First, with respect to "advertise," it is asserted that because the statute's definition section only defines "advertisement," the derivative meaning of the verb "advertise" is impossible to ascertain. This argument is not valid as it ignores the rule of statutory construction which holds that the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it. Clearly, the word "advertise" is but the verbal form of the noun "advertisement." What the statutory definition of the noun encompasses must by common sense apply to the verbal form of the noun when used in the same statute. And, of course, it is an axiom of statutory construction that statutes must be construed as a whole, and the several parts of a statute reflect light upon each other. In this statute, the meaning of "advertise" can and must be determined by reference to the definition of "advertisement" found in Section 1(10).

Why did the Colorado legislature choose to omit the definition of the verb "advertise"? It was no doubt because the legislature recognized two common-sense rules of legislative draftmanship: (1) Definitions in statutes should be limited to the fewest number of words and phrases possible, and (2) there is no need for a redefinition of terms. 2 *Sutherland, Statutory Construction,* § 4187, p. 360 (3d ed. 1943). Finally, it should be noted that Colorado's Consumer Protection Act finds its origins in the Uniform Deceptive Trade Practices Act, which, like the Colorado Act, employs the term "advertise" without defining it in the Uniform

Act's definition section. 9A *Uniform Laws Annotated,* Uniform Deceptive Trade Practices Act (pocket supp. 1967).

The statute's "bait and switch" terminology is attacked on the ground that it has no commonly understood meaning and is therefore unconstitutionally vague. This argument must fall for several reasons. First, Section 2(1)(o)(i) *specifically defines* "bait and switch" advertising as advertising which "consists of an attractive but insincere offer to sell a product or service which the seller in truth does not intend or desire to sell." Second, "bait and switch" advertising and selling techniques have long been recognized in the legal literature and have long been subject to equitable sanctions. *Electrolux Corp. v. Val-Worth, Inc.,* 6 N.Y. 2d 556, 161 N.E. 2d 197; *Singer Mfg. v. Redlich,* 109 F. Supp. 623 (S.D. Cal.); *Admiral Corp. v. Price Vacuum Stores,* 141 F. Supp. 796 (E.D. Pa.); *General Electric Co. v. G.E.M. Vacuum Stores,* 36 N.J. Super 234, 115 A.2d 626. "Bait advertising" is a term recognized in Colorado, *People v. Sprengel,* 176 Colo. 277, 490 P.2d 65, and other jurisdictions, *C. A. Kelley v. Duling Enterprises, Inc.,* 84 S.D. 427, 172 N.W.2d 727; *Lee Optical of Oklahoma v. W. Williamson,* 120 F. Supp. 128 (W.D. Okla). *See also* Commercial Notes to Uniform Deceptive Trade Practices Act, Section 2, 9A *Uniform Laws Annotated,* p. 17, 1967 Cumulative Pocket Part.

The use of the term "disparagement" in the statute is attacked on the basis that it has no widely understood meaning. It may be true that the Colorado Consumer Protection Act does not specifically define "disparagement" anywhere, but, in our view, the word "disparagement" has such a common meaning that to define it would be an exercise in redundancy. The legal literature contains many instances of the use of the word "disparagement" when dealing with forbidden trade practices. *Aerosonic Corp. v. Trodyne Corp.,* 402 F.2d 223 (5th Cir.); *Smith-Victor Corp. v. Sylvania Electric Products, Inc.,* 242 F. Supp. 302 (N.D. Ill., E.D.); *H. E. Allen Mfg. Co. v. Smith,* 224 App. Div. 187, 229 N.Y.S. 692; *Mayfair Farms, Inc. v. Socony Mobil Oil*

*Co.,* 68 N.J. Super 188, 172 A. 2d 26; *Menard v. Houle,* 298 Mass, 546, 11 N.E. 2d 436.

In *Electrolux,* the New York Court of Appeals enjoined a sales promotion scheme whereby a business firm first advertised a product at a very attractice price in order to invite inquiry, then disparaged or "knocked" the product when members of the public made inquiry, and finally offered another item for sale which was more expensive than the first but which seemed like a "bargain" in comparison to the disparaged product that was originally advertised. This deceptive use of advertising as a lure to sell other nonadvertised products or services is exactly the kind of trade practice which the Colorado Consumer Protection Act and the Uniform Deceptive Trade Practices Act, 9A *Uniform Laws Annotated,* Section 2(a)(8) of the Deceptive Trade Practices Act (pocket supp. 1967), prohibit. This is also the "disparagement" that Gym of America is accused of engaging in when it allegedly told members of the public that club privileges on terms as advertised would not be available because the advertised terms were too short in duration to be of any benefit to their health, while an expensive membership of a longer period of time would be quite helpful.

Appellee's last contention concerning the statute's purported vagueness is that the Act's "tie-in sales" language is too ambiguous and uncertain to meet due process requirements. This argument must also fall for several reasons. The Colorado Consumer Protection Act specifically defines "tie-in sales" to mean "an undisclosed condition to be met prior to selling the advertised product or service." 1969 Perm. Supp., C.R.S. 1963, 55-5-2(1)(a)(o)(iv). Furthermore, the concept of a "tie-in sale" is not new to the law as its practice has long been prohibited by the anti-trust laws. *Hunter Douglas Corp. v. Lando Products,* 215 F.2d 372 (9th Cir.); *Dehydrating Process Co. v. A. O. Smith Corp.,* 292 F.2d 653 (1st Cir.). These guideposts, added to the fact that a "tie-in sale," like "disparagement," and "bait and switch" tactics, is not a new or unfamiliar term to most business enterprises, leads us to conclude that its use in the Colorado Consumer

Protection Act does establish a standard against which one's business and trade activities can be tested. There is a definite background of experience and precedent to illuminate the meaning of the words employed in the statute. No one would reasonably be misled thereby.

## II.

The trial court's second basis for declaring the Act unconstitutional is that the statute is an "attempted exercise of power in excess of that which a state may lawfully do under its police powers." We disagree, and find that the legislature acted well within the police power of the state when it enacted the Colorado Consumer Protection Act.

The United States Supreme Court has continually upheld the proposition that states possess authority to safeguard the vital interest of their citizens. *City of El Paso v. Simmons,* 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446; *Home Bldg. and Loan Ass'n. v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413. The Supreme Court has also indicated that state legislatures have wide discretion to determine what is and what is not necessary, under their police power, to protect the general welfare. *E.g., see East New York Savings Bank v. Hahn,* 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34. Colorado has likewise recognized the broad power of the legislature in the area of police power. *Western Colorado Power Co. v. P.U.C.,* 159 Colo. 262, 411 P.2d 785; *Eachus v. People,* 124 Colo. 454, 238 P.2d 885; *In Re Interrogatories of Governor on Chapter 118, Session Laws of 1935,* 97 Colo. 587, 52 P.2d 663.

If the power to regulate activities which are affected with a public interest is a legitimate function of the police power, it follows that if particular business, commercial or trade practices affect the public interest, they in turn may be subject to state control. Reasonable state restraints are part of the price we must pay for an ordered society. The corollary to this is that the unrestricted privilege to engage in business or to conduct it as one pleases is not guaranteed by the constitution. *Swisher v. Brown,* 157 Colo. 378, 402 P.2d 621; *Cottrell Clothing Co. v. Teets,* 139 Colo. 558, 343 P.2d

1016; *In Re Interrogatories, supra.* Were it otherwise, the public's welfare might often become the forgotten orphan of commercial expediency.

The right to regulate in the name of the police power is especially clear when the legislative intent is to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public. *Murphy v. California,* 225 U.S. 623, 32 S.Ct. 697, 56 L.Ed. 1229; *Antlers Athletic Ass'n. v. Hartung,* 85 Colo. 125, 274 P. 831. And this police power relates not only to the public's physical or mental health and safety, but also to public *financial safety.* There is a necessary residuum of power which the state possesses to safeguard the interests of its people, and pursuant to this power laws may be passed to protect the public from financial loss, *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940; *Goldy v. Gerber,* 151 Colo. 180, 377 P.2d 111; *Zeigler v. People,* 109 Colo. 252, 124 P.2d 593, and to abate evils which are deemed to arise from the pursuit of business. *Wiggins Ferry Co. v. East St. Louis,* 107 U.S. 365, 2 S.Ct. 257, 27 L.Ed. 419.

We must now, therefore determine whether the prohibitions of the Colorado Consumer Protection Act are such as to bear a reasonable relationship to the protection of the public welfare. It is apparent to this Court that the deceptive trade practices which are the subject matter of the statute under attack in this case injuriously affect both honest business men and consumers. When consumers are induced to purchase inferior merchandise or services as a result of misleading solicitations, when the public is attracted to business concerns on the basis of statements falsely announcing the existence of products which are in fact non-existent, and when citizens discover that the product they have acquired carries with it a set of obligations which they did not intend to purchase, it is clear that the state's general and financial welfare is thereby aggrieved. To protect the public from such deceptive practices by enjoining their use is a proper and commendable exercise of the legislature's police powers.

It has been consistently held in other jurisdictions that false and misleading trade practices such as are prohibited by the Colorado Consumer Protection Act adversely affect the public interest and are subject to the state's police power. *See Electrolux Corp. v. Val-Worth, Inc.,* 6 N.Y. 2d 556, 161 N.E.2d 197. The federal courts have long since established the rule that the police power is an adequate basis upon which to issue a cease and desist order against those who induce sales through false and misleading advertising. *See, e.g., FTC v. R. F. Keppel and Bros.,* 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814; *FTC v. Winsted Hosiery Co.,* 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729; *Ford Motor Co. v. FTC,* 120 F.2d 175 (6th Cir.). These courts have concluded, as does this Court, that it is in the public interest to invoke the state's police power to prevent the use of methods that have a tendency or capacity to attract customers through deceptive trade practices. *Dr. W. B. Caldwell, Inc. v. FTC,* 111 F.2d 889 (7th Cir.). The Colorado Consumer Protection Act is an outgrowth of this conclusion and as such cannot be overturned, as the trial court did here, on the basis that the state's police power is not broad enough to regulate the activities sought to be controlled by the Act.

## III.

The trial court's third reason for finding the Colorado Consumer Protection Act to be unconstitutional lies in its conclusion that the Act's enforcement procedures violate equal protection. Where a violation occurs, the statute permits the attorney general to apply for a temporary restraining order or injunction under Section 7(1), or to seek, under Section 7(2), a voluntary "assurance of discontinuance" from the party alleged to have engaged in deceptive trade practices. Section 7(2) provides that where the attorney general has authority to institute a civil action, he may accept an assurance of discontinuance of the deceptive trade practice in lieu thereof. The statute thus gives the attorney general the option, whenever he has cause to believe that a person has engaged in a deceptive trade practice, of either filing an action in court against the alleged violator or

accepting his assurance that he will discontinue the illegal practice.

Appellee claims, and the trial court apparently agreed, that these alternative methods of enforcement render the entire Act unconstitutional, contending that because the statute fails to set forth criteria to assist the attorney general in choosing between the two methods, it is a denial of equal protection in violation of the Constitution of the United States and the Constitution of Colorado. We have reviewed the applicable law and conclude that this contention is not tenable.

It is the general rule of law that while a legislative body may not delegate the power to make or define a law, it may delegate the power, authority and discretion as to the execution and enforcement of the law. Because the power to make law necessarily involves a discretion as to what the law shall be, this authority may not be delegated from the legislature. Once the law has been made, however, then conferring authority as to how it shall be executed is a proper exercise of the legislative function. *Colorado Anti-Discrimination Comm'n. v. Case,* 151 Colo. 235, 380 P.2d 34.

This important principle of law has been recognized by the federal courts, especially with regard to the Federal Trade Commission. *Joseph A. Kaplan and Sons, Inc. v. FTC,* 347 F.2d 785 (D.C. Cir.). The FTC has not been delegated the power to make law, but only the authority to enforce it. As such, it has been allowed a wide discretion in formulating the appropriate remedy that is necessary to cope with discovered unfair trade practice. (*FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed. 2d 904; *FTC v. Ruberoid Co.* 343 U.S. 470, 72 S.Ct. 800, 96 L.Ed. 1081; *Jacob Siegel Co. v. FTC,* 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888), even where that remedy takes the form of a nonadjudicative settlement and stipulation between the parties. *See Coro, Inc. v. FTC,* 338 F.2d 149 (1st Cir.).

Just as the FTC has been allowed to decide upon the most effective enforcement techniques, so too should the Colorado attorney general be granted the opportunity to choose,

depending upon the circumstances of the case, between initiating an injunctive proceeding in court or accepting an assurance of discontinuance directly from the alleged violator. The analogy to FTC action becomes especially persuasive when one realizes that Section 7(2)'s "assurance of discontinuance" had its genesis in the consent orders issued in most FTC cases. As both the state attorney general and the FTC function as investigator, settlement initiator, prosecutor, and central administrator of their respective consumer protection laws, the fact that the attorney general's office is not an administrative agency like the FTC is not a distinguishing characteristic. The FTC's power to utilize outside-of-court enforcement devices instead of more stringent in-court actions has been favorably looked upon because such discretion promotes flexibility of approach and individualized treatment of the alleged violator. *See* David Rice, *Remedies, Enforcement Procedures and the Duality of Consumer Transaction Problems*, 48 Boston U.L. Rev. 589 (1968); Stephen Mindell, *The New York Bureau of Consumer Frauds and Protection — A Revision of its Consumer Protection Activities*, 11 N.Y.L. Forum 603 (1965). This flexibility should be similarly sanctioned in Colorado.

The advantages encompassed in such an enforcement scheme have already been recognized and codified in several other states. In New York, for example, *New York Executive Law*, § 63 (15) (McKinney's Laws of New York Annotated supp. 1971-72) gives the attorney general the authority to institute a civil action or to accept an "assurance of discontinuance" from any person engaged in repeated fraudulent or illegal acts while in the transaction of business.

Similar statutory provisions are present in Alaska, Arizona, Delaware, Florida, Kansas, Maine, Maryland, Massachusetts, Michigan, Missouri, New Hampshire, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Vermont, Washington and Wisconsin. These 19 states not only allow the state's attorney general to use the "assurance of discontinuance" device in lieu of formal court action whenever fraudulent and deceptive trade practices are being perpetrated on consumers,

but they have also not felt it necessary to articulate guidelines or standards to assist the attorney general in choosing between the two methods.

The above discussion should make apparent the well-established and extensively sanctioned grant of discretion to the state enforcement officer to settle controversies arising under consumer protection statutes in either a nonadjudicative or injunctive fashion. There is an important reason behind this widely accepted grant of discretion. Where a deceptive trade practice exists, individualized treatment of the particular offender is usually the most fair and efficient means of effectively terminating the practice. Whether the nature of the complaint calls for enforcement of the Colorado Consumer Protection Act by a voluntary assurance or by a court injunction is a question that calls for a discretionary determination by the attorney general. *See, e.g., Moog Industries, Inc. v. FTC,* 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed. 2d 370. As this Court stated in *Swisher v. Brown,* 157 Colo. 378, 402 P.2d 621:

"* * * It is not necessary that the legislature supply a specific formula. . . where flexibility and adaption of the legislative policy to infinitely variable conditions constitutes the essence of the program. The modern tendency is to permit liberal grants of discretion to. . . facilitate the administration of laws dealing with involved economic and governmental conditions. In other words, the necessities of modern legislation dealing with complex economic and social problems have led to judicial approval of broad standards, especially in regulatory enactments under the police power. With respect to such types of legislation, detailed standards in precise and unvarying form would be unrealistic and more arbitrary than a general indefinite standard."

The giving of prosecutorial discretion to the attorney general to determine which of several enforcement devices he should set into motion, after having become convinced that violations of the Act have occurred, is not susceptible to attack on equal protection grounds. As we have said in *People v. McKenzie,* 169 Colo. 521, 458 P.2d 232:

"* * * The fact that a prosecutor has the discretion to prosecute a defendant under one or both of two distinct offenses, which arise from a single transaction, does not constitute a. . . denial of equal protection of the laws."

The right of officials to meet statutory evils as they arise and according to the manner in which they arise must always remain within the sound discretion of the statute's enforcement officer. Here the statute's enforcement officer is the state attorney general and it is within his discretion to choose either of the statute's two enforcement schemes. So long as he does not unreasonably abuse this discretion, *Deutsch v. Aderhold,* 80 F.2d 677 (5th Cir.), his right to decide between accepting an assurance of discontinuance or initiating a court action will not be overturned on equal protection grounds.

The judgment of the trial court is reversed and the cause remanded with directions to hold further proceedings consistent with this opinion.