FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**February 1, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

|  |  |
|---|---|
| MADISON ROLAND, individually; GINA HARRIS, as legal guardian to Layla Roland, Joseph Roland, Mason Roland, and Lily Roland, minor children of and legal heirs to Joseph and Jossline Roland; SAMMI HECKERMAN, as personal representative of Decedent, Estate of Jossline Roland; ROSA BILBREY, as personal representative of the Estate of Joseph Roland, | |
|     Plaintiffs - Appellants/Cross-Appellees, | Nos. 22-1456, 23-1014 & 23-1012 (D.C. No. 1:22-CV-00899-MEH) (D. Colo.) |
| v. | |
| LETGO, INC; OFFERUP, INC., | |
|     Defendants - Appellees/Cross-Appellants. | |

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

Letgo is an online marketplace and mobile application that pairs unaffiliated

sellers and prospective buyers.  Joseph and Jossline Roland used Letgo's app to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

arrange for the purchase of a car for their 17-year-old daughter. Tragically, the seller of the car was an imposter. When the Rolands met him to consummate the purchase, he murdered them both and stole $3,000.

Plaintiffs—the Rolands' estate—sued Letgo, alleging a number of Colorado state law tort and consumer protection claims, and one claim based on federal law. The district court dismissed plaintiffs' tort claims because they did not plausibly allege Letgo made false or misleading representations, increased the risk of harm to the Rolands, or caused their deaths. And it dismissed the consumer protection claim because plaintiffs failed to plausibly allege Letgo knowingly engaged in a deceptive trade practice, that it acted recklessly or willfully, or intended to induce the Rolands to transact with Mr. Brown.

Because we agree the amended complaint fails to plausibly allege a cause of action under Colorado law, we AFFIRM.

## I.    Background[1]

### A. The Letgo Platform

At the time of the crimes, Letgo was a website and mobile application that allowed users to "buy from, sell to and chat with others locally." Aplt. App. at 00012.[2] It allows users to browse items for sale locally, view each other's profiles,

---

[1] These facts are taken from plaintiffs' amended complaint and documents incorporated by reference.

[2] The other defendant, OfferUp—a similar platform, acquired Letgo shortly before this litigation.

and send messages to coordinate a purchase.  Letgo competed against other online marketplaces, such as eBay and Craigslist.

To distinguish itself, Letgo advertised its "Verified User" feature.  After users created an account and accessed the Letgo marketplace, they were encouraged to "verify" their profile.  To receive a "Verified User" badge on your profile, users had to supply enough personal information to reach 50 points.  For example, a profile photo was 10 points, a phone number was 15 points, an email address was 5 points, a linked Facebook account was 25 points, and a government-issued ID was 40 points. *Id.* at 00117.  The user's profile would then reflect they were "verified with" whatever methods the user chose.  If a user submitted an email address or phone number, their profile would reflect they were "verified with" an email or phone number.  But until a user reached 50 points, their profile would prompt other users to request that they "verify" their profile.  In other words, to become a "Verified User," you would have to supply more than just a phone number and an email address.

The Letgo website explained it used "machine learning" to identify and block inappropriate content (such as stolen merchandise) and worked closely with local law enforcement to ensure the "trust and safety of the tens of millions of people who use Letgo."  Aplt. App. at 00013.  It also promoted "anti-fraud technology" to help detect possible scams.  But Letgo still encouraged users to only communicate through the app and to not share any other personal information.  It reminded users to take proper precautions when buying or selling online, to meet in a public place during the day,

and to consult third party sources to check a vehicle's history for theft.  Aplt. App. at

00145-46.

Joseph and Jossline Roland wanted to buy a car for their eldest daughter and

used Letgo to see if anyone in their area was selling one.  They found a listing posted

by Kyree Brown, who created his user profile under the pseudonym "James Worthy."

Mr. Brown posted a 2017 Toyota Rav 4 LE AWD for sale.  The advertised car had

been stolen a few days before.  His profile indicated he was "verified with" his phone

number, but users were prompted to "ask [him] to verify [his] profile."  He had no

profile photo, no reviews, and no "Verified User" badge:



Aplt. App. at 00079.

### B. The Murders

On August 14, 2020, the Rolands agreed to meet Mr. Brown in a PETCO parking lot at 11 p.m. to purchase the car.  When Mr. Brown arrived, he said he brought the wrong title for the car and asked the Rolands to follow him to his fictitious residence so he could retrieve the correct title.  But Mr. Brown did not have the vehicle title because the car was stolen.  The Rolands agreed to follow him to the second location.  When they arrived at an apartment complex, Mr. Brown approached the driver's side window with a handgun and demanded the money.  Mr. Roland attempted to grab the gun.  Mr. Brown, intending to shoot Mr. Roland, accidentally struck and killed Mrs. Roland.  He then killed Mr. Roland and stole the $3,000 they brought to purchase the car.  Law enforcement found Mr. and Mrs. Roland unresponsive in their vehicle.  They were declared dead just after midnight on August 15, 2020, leaving behind five minor children.

Law enforcement made contact with the Roland residence and obtained access to Mr. Roland's iPhone and reviewed the communications with Mr. Brown via the Letgo app.  Letgo gave law enforcement the information it had on the "James Worthy" account—which was only an email address.  Meanwhile, Mr. Brown set the car on fire and deleted his "James Worthy" account.  To engage in further criminal activity, Mr. Brown created another Letgo account using a different pseudonym with the same photos of the stolen (and now destroyed) car.

Twelve days after the murders, Verizon Wireless confirmed the location data of the phones used in the PETCO parking lot, at the apartment complex, and at the

5

location the car was destroyed.  Law enforcement obtained the location of Mr. Brown and arrested him.  His conviction included two counts of first-degree felony murder.

## II.    Discussion

Plaintiffs contend the district court erred in granting Letgo's motion to dismiss.  They argue that Letgo's business model and representations created a duty under Colorado law to provide adequate safety precautions to prevent bad actors from misusing the app.

We review dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo, accepting all well-pled factual allegations as true and construing them in the light most favorable to plaintiffs.  *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To satisfy the plausibility standard, "the complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (citations omitted).  We may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and 'matters of which a court may take judicial notice.'" *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (citing *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013)).

In a diversity case, we apply the substantive law of the forum state, Colorado, to analyze each claim. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Dish Network, LLC*, 17 F.4th 22, 29 (10th Cir. 2021).

Plaintiffs have asserted five claims[3] under Colorado law:

- Negligence

- Fraud

- Negligent Misrepresentation

- Wrongful Trade Practices under the Colorado Consumer Protections Act (CCPA), Colo. Rev. Stat. § 6-1-101

- Wrongful Death, Colo. Rev. Stat. § 13-21-201

We review each in turn.

### A. Negligence Claim

Under Colorado law, "[t]o recover on a negligence claim, a plaintiff must establish that (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused that injury." *N.M. by & through Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017) (citing *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004)). "In determining whether a defendant owes a duty to a particular plaintiff, the law distinguishes between acting and failure to act, that is, misfeasance, which is active misconduct that injures others, and nonfeasance, which is a failure to take positive

---

[3] Plaintiffs fail to address the district court's dismissal of their gross negligence and loss of consortium claims and therefore waive an appellate challenge to those claims.

steps to protect others from harm." *Smit v. Anderson*, 72 P.3d 369, 372 (Colo. App. 2002). When a defendant fails to preserve the status quo, the claim is based on nonfeasance. *Id.* But when a defendant makes a representation that creates or increases the risk of harm, the claim is based on misfeasance. *Id.* at 373.

Plaintiffs contend the district court erroneously categorized their negligence claim as one based on nonfeasance, and allege Letgo made three representations that actively increased the risk of harm to users like the Rolands: (1) it worked closely with law enforcement and used machine-learning technology to identify and block inappropriate and stolen merchandise, (2) it designated users as "verified with" certain personal information, and (3) it advertised its verification features and promoted the platform's safety.

According to plaintiffs, Letgo created an illusion that accounts like Mr. Brown's could be trusted but undertook no actual verification procedures. Thus, plaintiffs argue Letgo increased the risk that users like the Rolands would purchase stolen products or meet a seller who would cause them harm. We find this argument unpersuasive.

To determine whether a representation increases the risk of harm, we must look at the representation in context. For example, in one illustrative Colorado case, *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282 (Colo. App. 2009), the plaintiff claimed defendants negligently failed to detect drainage design flaws in a public works project and increased the risk of harm by misrepresenting such conditions. The plaintiff alleged the defendants put their "imprimatur on the project"

8

by stating in a letter that "[o]ther than a few minor issues, we believe that the drawings and specifications will be adequate to successfully complete the project[.]" *Id.* at 296. The court, however, found this did not constitute misfeasance because, in the context of the entire letter, the statement was not an expression of approval that created or increased a risk. *Id.* The letter explained that the defendants "had not been involved in the planning and design phases of the project, but . . . had a good understanding of what will be expected and what will be involved in constructing this project." *Id.* (internal quotation marks omitted). Because the letter made clear defendants were not giving firm assurances, but instead qualified their approval, the court determined they did not increase or create any risk of harm.

Here, all three of Letgo's alleged representations fail for the same reason. First, the representation concerning its work with law enforcement and use of technology to locate inappropriate or stolen items did not increase any risk of harm to the Rolands. Letgo had safety guidelines on its platform, warning users to take steps to protect themselves before buying or selling online, to meet in a public place during the day, to find another buyer or seller if there are any doubts about a user's authenticity, and to take proper precautions even if most Letgo users are trustworthy. Aplt. App. at 00145-46. Thus, in context, Letgo's statements are not an expression of approval that its platform is safe and that all users are trustworthy.

Second, the representation that Mr. Brown was "verified with" his phone number is similarly not a stamp of approval. His profile, taken as a whole, shows the

opposite conclusion. Letgo prompted users in red font—and at the top of his profile—to ask "James Worthy" to verify his profile. The profile had no reviews and no profile photo. The designation on Mr. Brown's profile that he was "verified with" his phone number, taken in context, is not an expression of approval that he was trustworthy and did not increase the risk of harm to the Rolands.

Third, Letgo's advertisements about its verification procedure did not create or increase a risk. Plaintiffs allege certain unspecified advertisements made by Letgo increased the risk of harm to the Rolands because Letgo was not actually verifying users. But no facts are alleged that Letgo misapplied, or failed to apply, its verification procedures. Instead, Letgo designated Mr. Brown's profile as "verified with" his phone number—because he entered his phone number and confirmed receipt of a text message—but still prompted users to ask him to verify his profile because he had yet to reach 50 points. Further, any statements about its verification procedures increasing safety would have to be read in context. Letgo's website made clear there were always risks involved with transacting with strangers online.

Although plaintiffs attempt to frame their negligence claim as one based on misfeasance, the representations they highlight are not expressions of approval that increased or created a risk to the Rolands. To the contrary, their claim boils down to an allegation that Letgo failed to protect the Rolands from harm, and that claim is grounded in nonfeasance. Plaintiffs' amended complaint makes this clear because they alleged Letgo had a duty (1) to assure the identity of sellers were not false, (2) to ensure all products were legitimate, (3) to vet individuals who attempt to become

"verified sellers," and (4) to ensure a purchase through the app would not create an unreasonable risk of injury. *See Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 467 P.3d 287, 295 (Colo. 2020). These allegations concern what Letgo did not do. It is therefore proper to construe them as assertions of nonfeasance.

Because plaintiffs allege nonfeasance, the analysis ends here. In nonfeasance cases, there must be a special relationship between the parties, and plaintiffs concede there is no special relationship. *See Smit*, 72 P.3d at 372 ("In nonfeasance cases, the existence of a duty has been recognized only in a limited number of special relationships between the parties such that social policy justifies the imposition of a duty to act.").

If we assume, however, that Letgo owed the Rolands a duty of care based on misfeasance, the claim still fails because plaintiffs do not plausibly allege Letgo's representations caused the Rolands' deaths. For plaintiffs to prevail on causation, they must show Letgo's negligence was a "substantial factor" in causing the Rolands' deaths. *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987). But "if an event other than the defendants' negligence appears predominant, the defendants' negligence cannot be considered a substantial factor." *Id.* The Rolands' decision to follow Mr. Brown to a second location and Mr. Brown's decision to murder them "loom larger as substantial factors." *Id.* Under these circumstances, Letgo's conduct in putting a "verified with" designation on Mr. Brown's profile, and its statements about safety and its verification procedures, were insignificant and not a substantial factor in causing the murders.

11

### B.  Fraud and Negligent Misrepresentation Claims

Next, plaintiffs contend Letgo committed fraud and misrepresentation by publishing false or misleading statements about the safety of its platform.

In Colorado, to establish fraud, a plaintiff must show: "(1) the defendant misrepresented a material fact; (2) the defendant knew the representation was false; (3) the claimant did not know the representation was false; (4) the defendant made the misrepresentation intending that the claimant act on it; and (5) damages resulted from the claimant's reliance." *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109, 1116 (Colo. App. 2010) (citations omitted).

Similarly, the elements of a claim for negligent misrepresentation require plaintiff to show: "(1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment." *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011) (en banc) (citations omitted).

The heightened standard in Federal Rule of Civil Procedure 9(b) applies to fraud claims.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Plaintiffs must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citing *Lawrence*

12

*Nat'l Bank v. Edmonds* (*In re Edmonds*), 924 F.2d 176, 180 (10th Cir. 1991)). "Rule 9(b)'s purpose is to afford [a] defendant fair notice of a plaintiff's claims and the factual grounds supporting those claims." *Clinton*, 63 F.4th at 1277 (internal quotation marks omitted). The heightened standard in Rule 9(b) may apply to a negligent misrepresentation claim when it rings of fraud. *Compare, e.g.*, *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) *with, e.g.*, *Tricontinental Indus., Ltd v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). We need not address this issue because plaintiffs' negligent misrepresentation claim fails under either pleading standard.

Plaintiffs allege the same three representations were false or misleading: (1) that Letgo worked closely with law enforcement and used technology to spot inappropriate or stolen items, (2) that it marked users as "verified with" some personal information, and (3) that its advertisements promoted its verification features were safe and could be trusted. Plaintiffs fail to plausibly allege these three representations constitute fraud or a negligent misrepresentation.

Causation is an element of both fraud and negligent misrepresentation, and the lack of factual allegations in plaintiffs' amended complaint warrant dismissal of these claims. Plaintiffs only offer conclusory statements that Letgo's representations were the proximate cause of the Rolands' deaths. But a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clinton*, 63 F.4th at 1280 (citations omitted). At oral argument, plaintiffs alleged the Rolands told their eldest daughter that they

13

relied on Mr. Brown's "verified with" designation, as well as other statements made by Letgo about its safety and verification features before pursuing the sale of the vehicle. But plaintiffs do not allege this reliance caused their deaths. Instead, plaintiffs allege only that but for reliance on these statements, the Rolands would not have transacted with Mr. Brown. Plaintiffs "have not nudged their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and we "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf," *Whitney v. State of N.M.*, 113 F.3d 1170, 1173–74 (10th Cir. 1997). Thus, we find the amended complaint fails to plausibly allege causation.

### C. Colorado Consumer Protection Act Claim

Plaintiffs similarly allege Letgo's misrepresentations constitute a deceptive trade practice. "The CCPA was enacted to regulate commercial activities and practices which, 'because of their nature, may prove injurious, offensive, or dangerous to the public.'" *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (quoting *People ex rel. Dunbar v. Gym of America, Inc.*, 177 Colo. 97, 112, 493 P.2d 660, 667 (1972)). To prove a claim for relief under the CCPA, a plaintiff must show:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a

14

> legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006) (en banc) (citations omitted).

The heightened pleading standard under Federal Rule of Civil Procedure 9(b) may apply to this claim as well because it alleges fraud, but there is some question whether it applies to an alleged CCPA violation. *See State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9, 13 (Colo. App. 2009). The district court applied the heightened pleading standard and plaintiffs argued the same in their opening brief. *See also HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011) ("[A] plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice.").

To establish a deceptive trade practice, a plaintiff must point to "a false statement of fact that either induces the recipient to act or has the capacity to deceive the recipient." *Rhino Linings USA*, 62 P.3d at 144. A plaintiff can also "establish a deceptive trade practice by proof that a defendant knowingly made a misrepresentation that induces a party's action or inaction." *Id.* at 147. "Thus, a plaintiff may satisfy the deceptive trade practices requirement . . . by establishing either a misrepresentation or that the false representation had the capacity or tendency to deceive, even if it did not." *Id.* at 148.

Plaintiffs contend Letgo made the following false or misleading statements: that Mr. Brown was a "verified" seller, that it had certain verification procedures in place, that

it used technology to spot inappropriate or stolen items, and that it worked closely with law enforcement. But plaintiffs fail to allege sufficient facts to show such representations were false or misleading.

First, Mr. Brown's profile indicated he was "verified with" his phone number, and plaintiffs offer no evidence demonstrating such a designation was false or misleading. And plaintiffs do not dispute Letgo's claim that it sent a text message to Mr. Brown's phone to confirm the phone number. Second, plaintiffs allege no facts that Letgo misapplied, or failed to apply, its verification procedures. Letgo's website explained its point system, and what was required to become a "Verified User." It is not clear why such statements were false or misleading. Third, plaintiffs provide no evidence Letgo failed to work with law enforcement or utilize technology to spot stolen items. Plaintiffs argue Letgo misrepresented Mr. Brown's car was not stolen. But Letgo's website specifically instructed users to consult third party sources to check a vehicle's history for theft. And plaintiffs concede Letgo worked with law enforcement after the murders.

Thus, even without the Rule 9(b) heightened pleading standard, plaintiffs fail to allege Letgo's representations constitute a deceptive trade practice.[4]

---

[4] We also affirm the district court's dismissal of plaintiffs' wrongful death claim. "[T]he right of the heirs to collect damages in a wrongful death case does not arise from a separate tort, but instead is wholly derivative of the injury to the decedent." *Steedle v. Sereff*, 167 P.3d 135, 140 (Colo. 2007). And "[t]he cause of action created by this statute arises out of tortious acts which injured the decedent and resulted in the decedent's death." *Pizza Hut of Am., Inc. v. Keefe*, 900 P.2d 97,

### D. Section 230

Letgo cross appeals the district court's refusal to find immunity under Section 230 of the Communications Decency Act, 47 U.S.C. § 230. Section 230 "creates a federal immunity to any state law cause of action that would hold computer service providers liable for information originating with a third party." *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 984–85 (10th Cir. 2000). Letgo is a computer service and will not "be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). But a computer service "that is also an information content provider of certain content is not immune from liability arising from publication of that content." *F.T.C. v. Accusearch, Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009). That is, Letgo will not be liable for the content posted on its platform by a third-party buyer or seller. But if Letgo "is responsible, in whole or in part, for the creation or development of information" provided on the platform, it may be liable. 47 U.S.C. § 230(f)(3).

The district court determined Letgo was not entitled to Section 230 immunity because it acted as a publisher or speaker. It found that although Letgo is a computer service that hosts third-party content, it is also an information content provider of certain other content. Specifically, the court held Letgo contributed in part to the production of the "verified with" designation on Mr. Brown's profile. Letgo argued the "verified with" designation was the sole product of Mr. Brown entering his phone

---

102 (Colo. 1995). Because plaintiffs fail to plausibly allege Letgo committed a tortious act, they also fail to allege a derivative wrongful death claim.

number, and that Letgo passively displayed the designation. But the court, relying on *Accusearch, Inc.*, determined Letgo contributed in part because it sent a text message to Mr. Brown to confirm his phone number existed, and subsequently created and placed the "verified with" designation on his profile. Thus, the court determined plaintiffs sufficiently pleaded, for a motion under Rule 12(b)(6), that Letgo contributed in part to the "verified with" designation.

We need not reach this issue. Since we affirm the district court's rulings on the state law claims, we need not resolve the federal law cross appeal.

### E. Leave to Amend

Finally, plaintiffs contend the district court erred in denying leave to amend their complaint to cure any deficiencies. The district court refused leave to amend because it would be futile.

"We review a district court's denial of leave to amend for abuse of discretion." *See Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010). "But, we exercise de novo review when a court denies a request to amend on the ground that amendment would be futile." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015) (citing *Merida Delgado v. Gonzales*, 428 F.3d 916, 921 (10th Cir. 2005)). Because the district court determined an amendment would be futile, we review the denial of leave to amend de novo.

We agree an amendment would be futile in these circumstances. Plaintiffs already had one opportunity to amend their complaint, and do not set forth additional facts on appeal that they claim would cure the deficiencies identified by the district

18

court.  Even so, additional facts would not cure the flaws in their complaint.  No additional facts would turn plaintiffs' nonfeasance claim into one based on misfeasance, nor would it turn Letgo's representations into a substantial factor that caused the Rolands' deaths for purposes of fraud or negligent misrepresentation. And plaintiffs cannot plausibly allege Letgo made knowing misrepresentations for purposes of plaintiffs' CCPA claim.

The district court did not err in denying the motion for leave to amend.

### III.    Conclusion

We affirm the district court's dismissal of plaintiffs' claims.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge